IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AARON FEIZA | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS LAW ENFORCEMENT | ) | CASE NO. 1:23-cv-1905 |
| TRAINING AND STANDARDS | ) | |
| BOARD("ILETSB"); Keith Calloway, | ) | |
| individually and in his capacity as | ) | |
| Executive Director of ILETSB; Sean | ) | |
| M. Smoot, in his official capacity as | ) | |
| Chairman of ILETSB; John | ) | |
| Idleburg, in his official capacity as | ) | |
| Vice Chairman of ILETSB; Mitchell | ) | |
| R. Davis III, in his official capacity | ) | |
| as a Board Member of ILETSB; | ) | |
| Ghida Neukirch, in her official | ) | |
| capacity as a Board Member of | ) | |
| ILETSB; Timothy Nugent, in his | ) | |
| official capacity as a Board Member | ) | |
| of ILETSB; J.W. Price, in his official | ) | |
| capacity as a Board Member of | ) | |
| ILETSB; Richard Watson, in his | ) | |
| official capacity as a Board Member | ) | |
| of ILETSB; Iris Y. Martinez, in her | ) | |
| official capacity as a Board Member | ) | |
| of ILETSB; Thomas Dart, in his | ) | |
| official capacity as a Board Member | ) | |
| of ILETSB; Rob Jeffreys, in his | ) | |
| official capacity as a Board Member | ) | |
| of ILETSB; Brendan Kelly, in his | ) | |
| official capacity as a Board Member | ) | |
| of ILETSB; and Kwame Raoul, in | ) | |
| his official capacity as a Board | ) | |
| Member of ILETSB, | ) | |
|       Defendants. | ) | |
| | ) | |

## MOTION FOR PRELIMINARY INJUNCTION

NOW COMES Plaintiff, Aaron Feiza, by and through his attorneys, Karlson Garza McQueary LLC, seeking a preliminary injunction against Defendants, Illinois Law Enforcement Training and Standards Board ("ILETSB"), Keith Calloway (individually and in his capacity as Executive Director of ILETSB), Sean M. Smoot (in his official capacity as Chairman of ILETSB), John Idleburg (in his official capacity as Vice Chairman of ILETSB), Mitchell R. Davis III (in his official capacity as a Board Member of ILETSB), Ghida Neukirch (in her official capacity as a Board Member of ILETSB), Timothy Nugent (in his official capacity as a Board Member of ILETSB), J.W. Price (in his official capacity as a Board Member of ILETSB), Richard Watson (in his official capacity as a Board Member of ILETSB), Iris Y. Martinez (in her official capacity as a Board Member of ILETSB), Thomas Dart (in his official capacity as a Board Member of ILETSB), Rob Jeffreys (in his official capacity as a Board Member of ILETSB), Brendan Kelly (in his official capacity as a Board Member of ILETSB), and Kwame Raoul (in his official capacity as a Board Member of ILETSB), and states as follows:

## FACTUAL BACKGROUND

Plaintiff incorporates by reference all the facts in the verified complaint. However, the following facts are particularly relevant for the Court's consideration:

Effective January 1, 2022, as part P.A. 101-652 (commonly known as the "SAFE-T Act") the "automatic decertification" portion of the Illinois Police Training Act was amended to include 50 ILCS 705/6.1(a-1), which allows ILETSB's Board to impose "automatic decertification" even though a police officer was never convicted of

any crime of any sort. (Ex. 1, Complaint ¶34). For purposes of "automatic decertification", 50 ILCS 705/6.1(a-1) states, "a person is 'convicted of, or entered a plea of guilty to, plea of nolo contendere to, found guilty of' regardless of whether the adjudication of guilt or sentence is withheld or not entered thereon. This includes sentences of supervision, conditional discharge, or first offender probation, **<u>or any similar disposition provided for by law</u>**." (emphasis added). (Ex. 1, Complaint ¶36)

Plaintiff was arrested on December 4, 2019, and charged with a felony in Kane County, Illinois, for an offense allegedly occurring in February 2019. (Ex. 1, Complaint ¶50). Without pleading or being found guilty, Plaintiff entered into a deferral of prosecution agreement on July 28, 2022. (Ex. 1, Complaint ¶51, Ex. A) On August 1, 2022, the trial court entered a "deferred prosecution order." (Ex. 1, Complaint ¶53, Ex. B)

With no documented approval by the ILETSB Board, on September 7, 2022, ILETSB Executive Director Calloway automatically decertified Plaintiff from working as a law enforcement officer. (Ex. 1, Complaint ¶55, Ex. C). By operation of Director Calloway's decertification, Plaintiff is forever forbidden from working as a Kane County Sheriff's deputy or a full-time law enforcement officer anywhere in Illinois. (Ex. 1, Complaint ¶58)

On September 12, 2022, Plaintiff, by counsel, demanded a hearing to contest his decertification. (Ex. 1, Complaint ¶59, Ex. D). On October 12, 2022, Executive Director Calloway responded to Plaintiff's demand for a hearing. (Ex. 1, Complaint ¶61, Ex. E). Executive Director Calloway denied Plaintiff's request pursuant to 50

ILCS 705/6.1, citing his deferral of prosecution fell into the "any similar disposition provided for by law" category and qualifying for automatic decertification. (Ex. 1 Complaint, Ex. E). On December 19, 2022, the trial court vacated all prior agreements relating to the charges against Plaintiff, rendering the July 28, 2022, deferral agreement void. (Ex. 1, Complaint ¶66, Ex. F) By letter, on January 18, 2023, despite having knowledge of Complaint Exhibit F, ILETSB refused to reinstate Plaintiff's certification. (Ex. 1, Complaint ¶67, Ex. G).

Plaintiff was never convicted of, or pled guilty to, any disqualifying felony or misdemeanor. (Ex. 1, Complaint ¶64). Plaintiff never received a pre-deprivation hearing. (Ex. 1, Complaint ¶72). Defendants have refused to provide Plaintiff a post-deprivation hearing or remedy. (Ex. 1, Complaint ¶ 73). Executive Director Calloway had no authority to decertify Plaintiff. (Ex. 1, Complaint ¶ 74). This Motion is Plaintiff's only opportunity to be heard regarding Defendants' revocation of his certification to work in his chosen occupation.

## ARGUMENT

**This Court should enjoin Defendants from restraining Plaintiff from engaging in his chosen occupation as a law enforcement officer because it violates his constitutional right to due process provided by the 5th and 14th Amendments.**

To be entitled to a preliminary injunction, Plaintiffs must demonstrate: "(1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer irreparable harm…" if relief is denied. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If those two elements are satisfied by the Plaintiffs, the Court's inquiry continues to consider: "(3) the

4

irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id.*

"The court, sitting as would a chancellor in equity, 'weighs' all four factors in deciding whether to grant the injunction, seeking at all times to 'minimize the costs of being mistaken.'" *Id.* at 12. The Seventh Circuit refers to this process "as the 'sliding scale' approach: the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh toward its side; the less likely it is the plaintiff will succeed, the more the balance need weigh toward its side." *Id.*

Each of the considerations support granting Plaintiff's motion.

I. <u>Likelihood of Success on the Merits</u>

Plaintiff is likely to succeed on the merits in a few ways: 1) the "automatic decertification" statute is void for vagueness; 2) ILETSB's "automatic decertification" of Plaintiff is an ongoing deprivation of a liberty interest without due process; 3) ILETSB's Executive Director does not have authority to decertify Plaintiff; 4) as a matter of law, Plaintiff is not eligible for automatic decertification; and 5) ILETSB automatically decertified Plaintiff based on a void state court order.

A. **The automatic decertification statute is void for vagueness**

A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). The Due Process Clause

prohibits Defendants from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.").

The U.S. Supreme Court held, "the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Laws must: (1) "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" and (2) "provide explicit standards for those who apply them" to prevent "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108. "As this Court has explained, a regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved." *Fox Television*, 567 U.S. at 253. Here, Section 6.1(a-1) of the Illinois Police Training Act provides no guidance as to what "similar dispositions" will be considered a disqualifying conviction.

A vague law is impermissible because it "'delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'" *Bushco v.*

*Shurtleff*, 729 F.3d 1294, 1308 (10th Cir. 2013)(quoting *Grayned*, 408 U.S. at 108–09). Here, ILETSB's Executive Director helped himself to interpreting the term "any similar disposition provided for by law" as contained in 50 ILCS 705/6.1(a-1).

Defendants have broadly interpreted the term "any similar disposition provided for by law" to include a dismissal of criminal charges by a state's attorney. However, the lack of an ascertainable standard deprives police officers of a clear understanding of what dispositions will be deemed "similar" to the outcomes of criminal cases more specifically defined by Section 6.1(a-1).

More important, since Plaintiff never pled guilty to anything, how does anyone know what criminal infraction he allegedly committed? Was it a felony? Was it a disqualifying misdemeanor? Now, based upon Defendants' expansive reading of the term "similar disposition", do police officers who are criminal defendants have to go to trial and be acquitted in order to retain the certification to remain engaged in the occupation of their choosing? More absurd, per ILETSB's tortured interpretation of Section 6.1(a-1), Plaintiff would have been better served being convicted of a non-disqualifying misdemeanor than having charges against him dismissed. If that were the Illinois General Assembly's intent, it would have clearly articulated as much.

**B. "Automatic decertification" takes a professional license with no due process**

"The due process clause of the Fourteenth Amendment forbids a state to deprive anyone of life, liberty, or property without due process of law." *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985). For a due process claim, a plaintiff must establish: "(1) deprivation of a protected interest, and (2) insufficient procedural

protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). Section 6.1(a-1) operates to deprive Plaintiff and other law-enforcement officers of a protectable interest with <u>no</u> due process.

### 1. Plaintiff has a protectable interest in his occupation

Plaintiff has a protectable interest in his certification as a police officer. "Government-issued licenses to perform certain types of work that allow the license holders earn their livelihoods are a form of government-created property—an entitlement—and have long been considered property protected by the Fifth and Fourteenth Amendments." *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017). "Decades ago, the Supreme Court recognized that 'the right to work for a living in the common occupations of the community' is a form of liberty interest originating in the Constitution." *Becker v. Ill. Real Estate Admin. & Disciplinary Bd.*, 884 F.2d 955, 957 (7th Cir. 1989)(citing *Truax v. Raich*, 239 U.S. 33, 41 (1915); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 102-03, n. 23 (1976)). A police officer is a common occupation of the community. "To be a policeman is to follow a particular calling, and to be excluded from that calling is an infringement of liberty of occupation." *Bigby*, 766 F.2d at 1056.

### 2. Automatic decertification has no procedural protections

Even though Plaintiff has a protected interest in his certification as a police officer, ILETSB provides him with no due process before or after he was automatically decertified. Since he has a protected interest in his certification, the Court must examine what process Plaintiff is due and when. See *Simpson*, 860 F.3d at 1006. As

8

articulated in *Simpson*, the U.S. Supreme Court, in *Matthews v. Eldridge*, provided balancing factors for determining what process is due. 424 U.S. 319 (1976). The Court must balance: 1) the private interest at stake; 2) the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and 3) the government's countervailing interest. *Simpson*, 860 F.3d at 1006.

### a. Private interest in a professional license is exceptional

The first factor for the Court's consideration is the private interest at stake. A citizen has a strong interest in the ability to engage in the occupation of their choosing. *Simpson*, 860 F.3d at 1008. As the U.S. Supreme Court noted, "the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985).

Here, Plaintiff is legally forbidden from engaging in his chosen occupation. The sole impediment to his earning a living is Defendants' illegal revocation of his license to engage in that occupation. Plainly, Plaintiff has an important and protected interest in earning a living and engaging in his chosen profession.

### b. ILETSB's total lack of due process creates a high risk of error

The second factor for the Court to weigh is the risk of erroneous deprivation and the value, if any, of additional procedural safeguards. Affording "some opportunity for employee to present his side of the case is recurringly of obvious value in reaching an accurate decision." *Loudermill*, 470 U.S. at 543.

9

"A state, in regulating eligibility for a particular type of professional employment, cannot 'foreclose a range of opportunities in a manner that contravenes due process, and specifically, in a manner that denies the right to a full prior hearing.'" *Becker*, 884 F.2d at 957 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 574 (1972)). "When a deprivation is irreversible—as is the case with a license suspension that can at best be shortened but cannot be undone—the requirement of some kind of hearing before a deprivation takes effect is all the more important." *Mackey v. Montrym*, 443 U.S. 1, 21 (1979).

Here, the opportunity for erroneous action by Defendants is overwhelming. For instance, if there were a mistaken identity and Defendants "automatically decertified" an officer, there is no process to correct that error. Similarly, due to the vague nature of Section 6.1(a-1), there is no opportunity to develop facts to determine whether an automatically decertified officer was sentenced to "supervision, conditional discharge, or first offender probation, or any similar disposition provided for by law."

### c. The government cannot justify eliminating due process

The third factor for the Court to consider is the government's interest. Admittedly, the government has a legitimate interest in protecting the public from unqualified officers. However, an important government interest alone, does not justify depriving a citizen of a license to engage in an occupation without ***any*** pre- or post-deprivation due process. The State of Illinois, like the Federal government, has an important interest in a regulating variety of public safety and health occupations.

However, doctors, lawyers, explosives experts, truckers, and airline pilots are able to be regulated and provided due process. There is no reason a police officer should be treated differently.

50 ILCS 705/6.3 provides a process for "discretionary decertification." There also is a process for emergency suspension of a law enforcement officer's certification. 50 ILCS 705/8.3. Both of those processes provide notice and an opportunity to be heard. Any policy asserted by Defendants in support of its interest are belied by the existing due process provided when suspending certifications or decertifying officers under Sections 6.3 and 8.3. Automatic decertification only applies after the termination of a criminal process. Meaning, the need for speedy action does not exist. Moreover, the process for affording due process to a police officer accused of disqualifying misconduct already exists. There is no government interest in depriving law enforcement officers of their license to work in their profession with absolutely no due process when, like Plaintiff, they have not been convicted of any crime.

### C. ILETSB's Executive Director is not authorized to "automatically decertify"

50 ILCS 705/6.1(a) expressly states the ILETSB Board has the authority to certify (and decertify) law enforcement officers. While Plaintiff asserts decertification is a non-delegable duty, no statute, rule, or action taken by the ILETSB Board empowers the ILETSB Executive Director to interpret 50 ILCS 705/6.1(a-1). Due to the vagueness of Section 6.1(a-1), ILETSB's Executive Director has assumed the responsibility of determining what criminal dispositions qualify for automatic

11

decertification and does so "on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09.

### D. As a matter of law, Plaintiff is not eligible for automatic decertification.

As referenced in Section 6.1(a-1) of the Act, "sentences of supervision, conditional discharge, or first offender probation" all require a criminal defendant to enter a plea of guilty or for a court to enter a finding of guilt. At the outset, a deferral of prosecution and dismissal of charges is not a "sentence." Here, Plaintiff never pled guilty and was never found guilty. Instead, the charges against Plaintiff were dismissed with no finding of guilt.

Even if the Court were to conclude 50 ILCS 705/6.1(a-1) is not unconstitutionally vague, under state law, Defendants' "automatic decertification" of Plaintiff is not permitted.

### E. Director Calloway's decision to automatically decertify the Plaintiff is void.

Director Calloway's September 7, 2022, decision to automatically decertify the Plaintiff was based entirely on Plaintiff's agreement to enter into a deferral agreement. Later though, the criminal court dismissed the criminal complaint against the Plaintiff and vacated all previous agreements. By vacating all previous agreements, to include the agreement to enter into a deferment agreement, the criminal court rendered void the factual basis (while still legally erroneous) for the ILETSB Director's automatic decertification.

## II. Irreparable Harm

"The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest." *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978); see also *Pratt v. Chicago Housing Auth.*, 848 F.Supp. 792, 796 (N.D.Ill. 1994)(favorably citing *Nat'l People's Ass'n v. Vill. of Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990)). In *Becker*, the Seventh Circuit held injunctive relief was appropriate when a "convicted felon" was denied a real estate license without a hearing. 884 F.2d at 959. There is irreparable injury when government is found to be "infringing upon the officer's liberty interest in pursuing a common occupation." *Bowman v. Twp. of Pennsauken*, 709 F.Supp. 1329, 1348 (D.N.J. 1989). As Judge Shadur concluded, "injunctive relief is a particularly appropriate remedy when the harm is prospective enforcement of an unconstitutional statute." *E&E Constr. Co. v. Ill.*, 674 F.Supp. 269, 277 (N.D.Ill. 1987). At this time, Plaintiff only seeks prospective equitable relief.

Every day that goes by is a day where Plaintiff cannot earn a living, loses pension credit, loses seniority, and is unable to engage in his chosen occupation. The sole reason Plaintiff cannot engage in his occupation is due to Defendants' wrongful decertification without any sort of due process. There is no pre-deprivation or post-deprivation remedy. There is no alternative means by which Plaintiff, or similarly situated officers, can address any errors, mistakes, or oversights or present otherwise mitigating evidence. This is Plaintiff's last, best, and only, opportunity to address his ongoing deprivation.

### III. Balancing the Harms

Plaintiff is currently unable to engage in his chosen occupation. ILETSB's illegal actions impairs Plaintiff's ability to make a living, earn pension credit, enjoy the rewards of engaging in meaningful work, and other benefits affiliated with engaging in a chosen occupation. Defendants will not be harmed in any way by it desisting from its unconstitutional "automatic decertification." Granting Plaintiff's motion for preliminary injunction does not in any way impair Defendant's interest in ensuring police officers are fit to serve the people of Illinois.

### IV. The Public Interest

"The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest." *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978). The public interest is served by requiring Defendants to comply with the law and Constitution when robbing citizens of their ability to earn a living in their chosen profession. As such, the Court should enter an injunction reinstating Plaintiff's certification as a permanent law enforcement officer.

### V. Notice

Counsel for Plaintiffs emailed a copy of this motion and complaint to Defendants' attorneys, Hal Dworkin, of the Illinois Attorney General's Office.

## CONCLUSION

Defendants have taken away Plaintiff's certification (a professional license) to engage in his chosen occupation as a police officer. They did so without due process, without authority, and by applying an abusive interpretation of a vague statute. The

Court should enter appropriate injunctive relief without further delay to stop this ongoing constitutional harm.

WHEREFORE, Plaintiff prays this Honorable Court ORDER and DECLARE:

1) Order Defendants to recertify Plaintiff;

2) Enjoin Defendants from impairing Plaintiff's liberty interest in engaging in his chosen profession as a police officer without due process of law;

3) Order and declare 50 ILCS 705/6.1(a-1) void for vagueness and unenforceable against Plaintiff;

4) Order and 50 ILCS 705/6.1(a-1) unconstitutional as applied to Plaintiff and on its face and unenforceable against Plaintiff;

5) Enjoin ILETSB Executive Director Keith Calloway from interpreting 50 ILCS 705/6.1(a-1) and decertifying law enforcement officers pursuant to that portion of the Illinois Police Training Act; and

6) Order all other just and proper relief available under the law.

                                      Respectfully submitted,

                                      /s/ *Keith A. Karlson*

Keith A. Karlson (ARDC# 6279194)
Mark S. McQueary (ARDC# 6322703)
MaryKate Hresil (ARDC# 6342104)
KARLSON GARZA McQUEARY LLC
235 Remington Boulevard, Suite 5B
Bolingbrook, Illinois 60440
(708)761-9030
kkarlson@kgmlawyers.com
mmcqueary@kgmlawyers.com
mkhresil@kgmlawyers.com