**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

AARON FEIZA,                   )
                                      )
                 Plaintiff,   )
                                        )
                 v.             )   Case No. 23 cv 1905
                                        )
ILLINOIS LAW ENFORCEMENT      )   Hon. Virginia M. Kendall
TRAINING AND STANDARDS        )
BOARD ("ILETSB"), *et al.*,         )
                                        )
               Defendants.  )
                                        )

**DEFENDANTS' COMBINED MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS AND RESPONSE TO PLAINTIFF'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

BACKGROUND ................................................................................................. 3

MOTION TO DISMISS ....................................................................................... 9

*Legal Standard* ............................................................................................... 9

*Argument* ...................................................................................................... 11

   **I.   The Complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiff lacks standing.** ..................................................................................... 11

   **II.  The Complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a plausible claim for relief.** ............................................................ 13

     **A.   Count I does not state a plausible substantive due process claim because there is no fundamental right at issue and the Act has a clear rational basis.** ................... 13

     **B.   Count II does not state a plausible claim because the Act is not unconstitutionally vague.** ...................................................................................... 15

       **1.   Plaintiff's facial voidness challenge of §6.1(a-1) fails.** .......................... 16

       **2.   The Act is not unconstitutionally vague as applied to Plaintiff.** .................. 17

       **3.   If the Court finds §6.1(a-1) ambiguous, the Court should apply the canon of *ejusdem generis*.** ................................................................................. 20

     **C.   Count III does not state a plausible claim for procedural due process because the Act does not create a property or liberty interest necessitating additional process, and in any event the Act affords sufficient process through the criminal courts.** ............................................................................................................ 21

     **D.   Count IV's claim for declaratory and injunctive relief fails as a standalone claim.** ................................................................................................................. 24

     **E.   Count V fails because this Court has no jurisdiction to issue a writ of mandamus directing a state official to act.** ................................................................ 25

RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION............. 26

*Legal Standard* ............................................................................................. 26

*Argument* ...................................................................................................... 27

   **I.   Plaintiff does not have a likelihood of success on the merits.** ................................ 27

   **II.  Plaintiff has not shown sufficient irreparable harm.** ........................................ 27

   **III.  The public interest favors denying a preliminary injunction.** ............................. 28

     **A.   The public has an interest in law enforcement officers who obey the laws they are sworn to enforce.** ............................................................................................ 28

     **B.   Plaintiff should not be rewarded for attempting to avoid the clear consequences of the statute.** ......................................................................................... 30

CONCLUSION ................................................................................................ 31

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. State Farm Mutual Automobile Insurance Co.*, No. 19 cv 3028, 2021 U.S. Dist. LEXIS 63099 (N.D. Ill. Mar. 31, 2021)....................................................................... 25

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009)................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 10

*Bannon v. Edgewater Med. Ctr.*, 406 F. Supp. 2d 907 (N.D. Ill. 2005) ..................................... 10

*Becker v. Illinois Real Estate Admin. & Disciplinary Bd.*, 884 F.2d 955 (7th Cir. 1989)........... 13

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 557 (2007) ................................................................. 10

*Bhalerao v. Illinois Department of Financial & Professional Regulations*, 834 F. Supp. 2d 775 (N.D. Ill. 2011)........................................................................................................................ 28

*Boucher v. Sch. Bd. of Sch. Dist. Of Greenfield*, 134 F.3d 821 (7th Cir. 1998) ......................... 26

*Chapman v. United States*, 500 U.S. 453 (1991) ....................................................................... 17

*Chelo v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035 (7th Cir. 2021)........................................ 12

*Coniston Corp v. Hoffman Estates*, 844 F.2d 461 (7th Cir. 1988); .............................................. 26

*Consumer Financial Protection Bureau v. ITT Educational Services, Inc.*, 219 F. Supp. 3d 878 (S.D. Ind. 2015) ..................................................................................................................... 16

*FCC v. Fox TV Stations, Inc.*, 567 U.S. 239 (2012) ................................................................... 16

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357 (7th Cir. 2019)................................... 26

*Gilbert v. Homar*, 520 U.S. 924 (1997) ...................................................................................... 22

*Goodpaster v. City of Indianapolis*, 736 F.3d 1060 (7th Cir. 2013)........................................... 14

*Haggard v. Tennessee*, 421 F. 2d 1384 (6th Cir. 1970)......................................................... 25, 26

*Haze v. Kubicek*, 880 F.3d 946 (7th Cir. 2018) ......................................................................... 25

*Hertz v. Record Publishing Co.*, 219 F.2d 397 (3d Cir.1955) .................................................... 25

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)................................. 16

*Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) ..................................... 26, 27

*In re Campbell*, 264, F. 3d 730 (2001) ....................................................................................... 26

*Kissick v. Huebsch*, 956 F. Supp. 2d 981 (W.D. Wis. 2013)...................................................... 17

*Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003)................................................................. 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................. 11

*Matthews*, 424 U.S. 319 (1976) ........................................................................................... 21, 22

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ............................................................................. 26

*McCauley v. City of Chicago,* 671 F.3d 611 (7th Cir. 2011) ...................................................... 11

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020)............................................................................. 26

*Palka v. Shelton*, 623 F.3d 447 (7th Cir. 2010) ......................................................................... 14

*Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990 (7th Cir. 2000)........................................... 10

*Southwest Airlines Co. v. Saxon*, ___U.S.___ , 142 S. Ct. 1783, 1789 (2022)............................ 20

*Storck USA L.P. v. Farley Candy Co.*, 14 F.3d 311 (7th Cir. 1994)............................................ 28

*Thanos v. Martin*, No. 90 cv 0393, 1990 U.S. Dist. LEXIS 1215 (N.D. Ill. Feb. 2, 1990) ......... 28

*United States v. Kozinski*, 16 F.3d 795 (7th Cir. 1994) .............................................................. 18

*United States v. Powell*, 423 U.S. 87 (1975) ............................................................................. 17

*United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) .............................................................. 17

*Winter v. Nat. Res. Def. Counc.*, 555 U.S. 7, 20 (2008) ................................................. 26, 27, 28

*Yates v. City of Chicago*, 58 F.4th 907 (7th Cir. 2023)...................................................... 14, 16, 22

**Statutes**

28 U.S.C. § 2201 ....................................................................................................................... 24

28 U.S.C. §2202........................................................................................................................ 24

50 ILCS 705/6.1 ........................................................................................................... 9, 15, 21, 23

50 ILCS 705/6.7 ........................................................................................................................ 12

50 ILCS 705/8.1 ................................................................................................................... 13, 23

**Regulations**

20 Ill. Adm. Code § 1720.20....................................................................................................... 13

## INTRODUCTION

The Illinois Police Training Act (the "Act") provides that local and municipal law enforcement agencies must certify that all full-time law enforcement officers or county correctional officers they employ successfully complete the Minimum Standards Basic Law Enforcement or County Correctional Training Course within six months of the officer's full-time employment. 50 ILCS 705/8.1(a); *see also* 50 ILCS 705/8. "An employing agency may not grant a person status as a law enforcement officer unless the person has been granted an active law enforcement officer certification by the Board." 50 ILCS 705/8.1(a). Thus, if an officer does not receive this training within six months of beginning employment with a law enforcement agency, or the agency does not receive a training waiver from the Board due to the individual already having extensive prior law enforcement or county corrections experience, then the officer must forfeit their position. The Act provides that individual officers do not have any property interest in law enforcement certification. 50 ILCS 705/6.7.

The Act also provides mechanisms to decertify officers. There are two ways an officer may become decertified: discretionary and automatic decertifications. The Board has the discretion to decertify an officer upon notice and a hearing. 50 ILCS 705/6.3. The Act also provides that officers shall be automatically decertified by operation of law if they have "been convicted of, found guilty of, entered a plea of guilty to, or entered a plea of nolo contendere to, a felony offense under the laws of this State or any other state which if committed in this State would be punishable as a felony." 50 ILCS 705/6.1(a).

> For purposes of [Section 6.1], a person is "convicted of, or entered a plea of guilty to, plea of nolo contendere to, found guilty of" regardless of whether the adjudication of guilt or sentence is withheld or not entered thereon. This includes sentences of supervision, conditional discharge, or first offender probation, or any similar disposition provided for by law.

50 ILCS 705/6.1(a-1).

On December 3, 2019, Plaintiff was indicted for Class 4 felony possession of a controlled substance.[1] (Indictment in *People v. Aaron Feiza*, Kane County Case No. 19 CF 2412, attached hereto as Exhibit A).[2] He was arrested the following day. (ECF No. 1 ¶ 50; Arrest Warrant in *People v. Aaron Feiza*, Kane County Case No. 19 CF 2412, attached hereto as Exhibit B). Over two-and-a-half years later, on July 28, 2022, Plaintiff entered into a deferred prosecution agreement with the State's Attorney's Office of Kane County, Illinois. (*Id.* ¶ 51). Consequently, when that agreement was accepted and filed with the court on August 1, 2022, he was automatically decertified as a matter of law pursuant to Section 6.1 of the Act. Plaintiff now challenges Section 6.1 of the Act, alleging that this automatic decertification was unconstitutional. He also brings a motion for preliminary injunction, requesting that this Court order Defendants to recertify him.

Plaintiff's claims should be dismissed and his motion for preliminary injunction should be denied. As an initial matter, Plaintiff fails to state a plausible cause of action. Illinois law explicitly provides that Plaintiff does not have a property interest in being certified as a law enforcement officer. Accordingly, Plaintiff lacks standing to bring any of his claims. Likewise, the individual counts in the Complaint all fail to state plausible causes of action. Count I, which brings a claim for substantive due process, fails because there is no fundamental right at issue and Section 6.1 of the Act has a clear rational basis. Count II, which alleges that Section 6.1(a-1) is void for vagueness, fails because the terms of the statute are sufficiently clear for an ordinary citizen to understand what conduct would lead to automatic decertification. Count III, which brings a claim

---

[1] Defendants note that Plaintiff's criminal court records were sealed, thus Defendants do not have access to a complete record of Plaintiff's criminal proceedings. (*See* December 19, 2022 order *in People v. Aaron Feiza*, Kane County Case No. 2019 CF 2412, attached to Plaintiff's Complaint as ECF No. 1-6).

[2] Courts may take judicial notice of court records, including those of the underlying state court proceedings. *Lietzow v. Vill. Of Huntley*, No. 17 cv 5291, 2018 U.S. Dist. LEXIS 202536, at *7 (N.D. Ill. Nov. 29, 2018).

for procedural due process, fails because of the lack of a property right and because the underlying criminal proceedings already provide sufficient process. Count IV brings a claim for declaratory and injunctive relief. It does not state any free-standing cause of action and therefore rises and falls with the other claims. Count V, which seeks a writ of mandamus, fails because this Court does not have jurisdiction under either state or federal law to issue a writ of mandamus directing a state agency to act. For these reasons, the Complaint should be dismissed.

Because Plaintiff has not stated a plausible cause of action, the motion for preliminary injunction consequently does not establish a likelihood of success on the merits. Additionally, Plaintiff has not satisfied his burden of showing irreparable harm if an injunction does not issue. Finally, the public interest factors favor denying the preliminary injunction because deferred prosecution agreements are designed for individuals who recognize the underlying charged criminal activity and qualify to avoid a prison sentence and a permanent conviction. Such agreements are not designed to allow individuals to avoid all consequences of their actions, as Plaintiff seeks here. Therefore, the motion for preliminary injunction should be denied.

## BACKGROUND

Plaintiff was an active Kane County sheriff's deputy for 15 years until he was arrested after a video surfaced of him ingesting cocaine.[3,4] Plaintiff was placed on paid administrative leave during the pendency of his felony criminal case proceedings. (Ex. C). The arresting agency was the Illinois State Police North Central Narcotics Task Force.[5]

---

[3] Susan Sarkauskas, *Kane County Deputy Gets Pretrial Diversion on Cocaine Charge*, DAILY HERALD, August 29, 2022, attached hereto as Exhibit C.

[4] May 21, 2021 Transcript of Proceedings in *People v. Aaron Feiza*, Kane County Case No. 2019 CF 2412, attached hereto as Exhibit D.

[5] July 15, 2022 Transcript of Proceedings in *People v. Aaron Feiza*, Kane County Case No. 2019 CF 2412 at 4-5, attached hereto as Exhibit E.

**Plaintiff is recorded on cell phone video ingesting cocaine.**

Walter Brown ("Brown) and his one-time girlfriend and roommate, Sherry Kublick ("Kublick"), socialized with Plaintiff in the evening of February 9, 2019 and early morning hours of February 10, 2019. (Ex. D at 50:4-56:19). Kublick recorded Plaintiff ingesting cocaine on her cell phone. (*Id.* at 56:8-19, 58:1-59:6). Kublick forwarded that cell phone video to Brown, and later, to the Illinois State Police. (*Id.* at 16:07-16:11; 69:18-70:03). Brown also provided the Illinois State Police a copy of the cell phone video. (*Id.* at 40:20-41:20). Kublick testified before the grand jury, and the video was used as an exhibit to her grand jury testimony. (*Id.* at 87:13-17). Kublick also testified at a hearing on Plaintiff's motion to suppress the cell phone video. (*Id.* at 46:11-94:9). Kublick testified at the motion to suppress hearing that Brown, Kublick and Plaintiff began the evening of February 9, 2019 drinking alcohol at the American Legion. (*Id*. at 50:11-19). They then relocated to Plaintiff's brother's house, where they continued to drink alcohol. (*Id.* at 50:20-50:24). Brown, Kublick, and Plaintiff then went to Brown and Kublick's house, where they began to snort cocaine. (*Id.* at 51:06-56:10, 93:10-94:03). The cocaine was lined up on a red plate by Brown, and then passed to Kublick and Plaintiff. (*Id.* at 55:03-56:10). Kublick observed Plaintiff ingest cocaine several times that evening, and recorded a brief 30-second video of Plaintiff ingesting cocaine. (*Id.* at 51:06-56:10, 93:10-94:03).

**Proceedings in Plaintiff's criminal case.**

Plaintiff was indicted by a Kane County grand jury on December 4, 2019. (Ex. A). Plaintiff was initially co-prosecuted by the Kane County State's Attorney's Office and the Illinois Attorney General's Office. (Ex. E at 4:01-5:04). On January 5, 2021, Plaintiff disclosed two expert witnesses to the prosecution and provided copies of their curriculum vitaes and expert report.[6] On March 11,

---

[6] Defendant's First Supplemental Disclosure to the State dated January 5, 2021, attached hereto as Exhibit F.

2021, Plaintiff filed a motion to suppress physical evidence (the video of Plaintiff ingesting cocaine) and at least three motions *in limine* to bar other evidence.[7] On June 7, 2021 Plaintiff filed a motion to disclose *Brady* material. (Ex. H; Ex. G)*.* On June 9, 2021, Plaintiff filed a motion for *in camera* inspection of documents Plaintiff had subpoenaed from the Illinois State Police. (Ex. G)*.* Plaintiff's motions *in limine* and motion to suppress the video proceeded to hearing on May 21, 2021, June 14, 2021, and July 12, 2021. (*Id.*). On July 12, 2021, Plaintiff filed a motion to dismiss for failure to disclose *Brady* material. (*Id.*; Ex. H). On September 27, 2001, Plaintiff's motion to dismiss was denied. (Ex. G)*.* On October 4, 2021, Plaintiff's motion to suppress the video was denied. (*Id.*). On October 8, 2021, the case was set for bench trial for January 24 and 25, 2022.[8]

On June 21, 2022 the Kane County Assistant State's Attorney attempted to *nolle pros* Plaintiff's case. (Ex. J at 2:14-18). The Assistant Attorney General was under the impression that the disposition was to be formal (external) pretrial diversion. (*Id.* at 3:01-12). Plaintiff's defense attorney represented to the court that Plaintiff's diversion, which "has been handled internally, rather than externally" had begun a few months prior. (*Id.* at 3:15-21). The Assistant Attorney General explained that there was some confusion about whether this was going to be a formal or informal pretrial division [sic]." (*Id*. at 5:07-9). The court acknowledged that the Assistant Attorney General had a say in the outcome, and the matter was continued for the parties to clarify their positions. (*Id.* at 4:04-13) ("I am not taking this, entering a *nolle pros*, signing a *nolle pros*, unless somebody tells me what the attorney general's position is […]").

---

[7] Kane County Circuit Clerk for Illinois 16th Judicial Circuit, Docket in *People v. Aaron Feiza,* Kane County Case No. 2019 CF 2412, attached hereto as Exhibit G; Ex. D at 3:07-21; Defendant's Pretrial Motions, attached hereto as Exhibit H.

[8] October 8, 2021 order in *People v. Aaron Feiza*, Kane County Case No. 2019 CF 2412, attached hereto as Exhibit I.

On July 14, 2022, Michelle Halbesma, Deferred Prosecution Program Director of the Kane County State's Attorney's Office, emailed Kane County Assistant State's Attorney Robert Dore, attaching a draft deferred prosecution agreement. (Attached hereto as Exhibit K). In the email, Ms. Halbesma noted that she would "not be in the office tomorrow, so if Mr. Feiza does intend to enter DPP, I would suggest he and his attorney meet with Jessica prior to court to do the required taped statement." (*Id.*). The required taped statement referred to the practice of the Kane County State's Attorney's Office to require participants in their deferred prosecution programs to complete a videotaped admission of guilt.[9] (Ex. L). The draft agreement attached to Ms. Halbesma's email contained a provision that "12. The defendant agrees to state a factual basis under oath admitting to the elements of the pending charge or charges." (Ex. K at ¶ 12). The draft order attached to the email identified it as a "Felony Drug Deferred Prosecution Order." (Ex. K).

On July 15, 2022 the court inquired about what disposition was contemplated:

> THE COURT: The diversion program is one that's existing already or what?
> MR. DORE: No, we are going to do a formal one. The State has accepted them into theirs but the AG's office wants -- Attorney General's Office wants a little bit of more particularity to the order. So we have been in negotiation on that, and I think we have an agreement on that. We've --
> THE COURT: My question, I guess, should be is this the second chance program that's been around for 30 years or is it this -- one of the other diversion programs?
> MR. DORE: It's one of our diversion programs, a drug diversion program, Judge.
> THE COURT: Is this something that is existing now?
> MR. DORE: It is.
> THE COURT: What do we call that?
> MR. CAMIC: I think you're calling it deferred

---

[9] *Available at* http://saopublic.co.kane.il.us/Pages/SecondChance.aspx. Attached hereto as Exhibit L. "Courts may take judicial notice of official publications on government websites." *Streight v. Pritzker*, No. 21 cv 50339, 2021 U.S. Dist. LEXIS 180894 at *8 (N.D. Ill., Sept. 22, 2021).

> prosecution.
>
> MR. DORE: Deferred prosecution program.

(Ex. E at 3:01-21). The court then expressed concern about the proposed disposition of the case:

> THE COURT: What's occurring now is there -- the
> disposition was going to be originally was a nolle
> pros?
> MR. CAMIC: Yes, Judge.
> MR. DORE: That's because --
> THE COURT: I don't want to get behind it.
> Nolle pros is the State's Attorney decision. It's
> not my decision. I can't do anything on a nolle
> pros. But now you're telling me that this
> disposition now would be a diversion program.
> MR. DORE: Yes, Judge.
> THE COURT: Right. Well, see now I have to
> accept that -- I don't have to accept that. I don't
> have any discretion on the nolle pros. I have
> discretion on whether I would accept the diversion.
> I want to have another 402 hearing on this.

(*Id*. at 5:09-24).

The parties returned to court on August 1, 2022. The Assistant Attorney General disagreed with the case being *nolle pros*'d, and insisted on a diversionary sentence. (Ex. M at 6:17-22). The Kane County Assistant State's Attorney informed the judge that the Kane County State's Attorney, Jamie Mosser, "would like the AG's office to discontinue their involvement in this case." (*Id.* at 7:09-14). Based on that representation and its understanding of the law, the court found that the Attorney General's office could not continue to participate in the prosecution over the Kane County State's Attorney's objection. (*Id.* at 2:15-7:6; 23:6-11). The Kane County State's Attorney's Office and Plaintiff alone, with no input from the Attorney General's Office, then negotiated the terms of a deferred prosecution agreement.[10] The court inquired at length about the

---

[10] In the version of the deferred prosecution agreement that Plaintiff executed and was filed with the court, the Attorney General's office was mistakenly left in as a party to the agreement. That was later corrected. *See* August 24, 2022 order, attached hereto as Exhibit N.

terms of the diversion program proposed for Plaintiff, and whether Plaintiff had been on any type

of diversion previously.

> THE COURT: Now just hold on.
> Because here what I don't know
> anything at all about this case.
> First of all, the first time that --
> when this case began, was he on any kind of
> diversion program then up until now?
> MR. DORE: No.
> THE COURT: So he was not on -- in my mind,
> it sounds as if he was either on his own
> diversion program or the -- or a personal
> diversion program set up by the State's
> Attorney's office or the sheriff of Kane County.

(*Id.* at 12:01-12). The court specifically wanted to know if it was an informal or formal

arrangement. (*Id.* at 12:1-19:4). The court expressed concern that a "personal diversion program"

was being created for Plaintiff:

> A personal diversion program is a
> huge problem because it depends on whoever —
> what the person is who is making the decisions to
> put somebody in the program, whether it's the
> State's Attorney's personal diversion, meaning I
> like this person or I like this lawyer, therefore
> this person goes into a diversion program.
>
> Or the sheriff's personal program
> where I like this defendant or I like this
> employee so I'm going to put him in the program.
> It's contrary to the interest of the
> community in my opinion.
>
> ***
>
> I have to be honest, I'm not totally
> happy with this.
> I don't really like how this whole
> thing proceeded. I think it was then outside the
> court. That's what I think.

(*Id.* at 18:13-23; 19:23-20:03).

Kane County deferred prosecution agreements typically require videotaped admissions of guilt. (Ex. L; Ex. K). Plaintiff's did not. (ECF No. 1-1). On August 1, 2022, the court accepted the deferred prosecution agreement executed on July 28, 2022 by Plaintiff and the Kane County State's Attorney's Office, which removed the requirement of a videotaped admission of guilt. (Ex. M at 21:21-24; ECF No. 1-1). The deferred prosecution order the court signed on August 1, 2022 also had the words "felony drug" removed from the title of the order compared to the draft that had been distributed on July 14, 2022. (*Compare* final order, *ECF* No. 1-2 and draft order, in Ex. K).

**Plaintiff's automatic decertification by operation of law.**

After the acceptance and entry of the Deferred Prosecution Agreement by the criminal court judge, Plaintiff was decertified as a law enforcement officer by automatic operation of law on August 1, 2022 pursuant to the Police Training Act as amended, 50 ILCS 705/6.1(a), which provides that a law enforcement officer will be automatically decertified by operation of law if he is "convicted of, or entered a plea of guilty to, plea of nolo contendere to, found guilty of" a felony offense "regardless of whether the adjudication of guilt or sentence is withheld or not entered thereon. This includes sentences of supervision, conditional discharge, or first offender probation, or any similar disposition provided for by law." Plaintiff's deferred prosecution agreement is "any similar disposition provided for by law." ILETSB memorialized Plaintiff's automatic decertification by operation of law in a letter to Kane County Sheriff Ronald Hain on September 7, 2022. (Attached hereto as Exhibit O).

**MOTION TO DISMISS**

*Legal Standard*

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case based on "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When moving to dismiss under Federal Rule of Procedure 12(b)(1) where "the contention is that there is *in fact* no subject

matter jurisdiction, the movant may use affidavits and other material to support the motion. . . . And the court is free to weigh the evidence to determine whether jurisdiction has been established." *Bannon v. Edgewater Med. Ctr.*, 406 F. Supp. 2d 907, 920 (N.D. Ill. 2005); *see also Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000) (internal quotations omitted) ("[W]hen evidence pertinent to subject matter jurisdiction has been submitted, the court may properly look beyond the jurisdictional allegations of the complaint to determine whether in fact subject matter jurisdiction exists."). Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

A party may also move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Section 12(b)(6) provides for dismissal of a complaint where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under this standard, a complaint must contain a claim to relief that is plausible on its face, which in turn requires sufficient factual allegations to permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 557 (2007)) (internal quotation marks omitted). Purely legal conclusions are insufficient. *Id.* ("Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.").

When reviewing the sufficiency of a complaint, the court must accept as true all well-pleaded factual allegations. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). However, legal conclusions and "conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.*

*Argument*

## I. The Complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiff lacks standing.

Pursuant to Rule 12(b)(1), the Court may dismiss claims for which the plaintiff lacks standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 445 (7th Cir. 2009). Standing is a jurisdictional requirement, which Plaintiff bears the burden of establishing. *Id.* It addresses the question of whether Plaintiff is entitled to have the court decide the merits of this particular issue. *Id.*

In order to have standing, Plaintiff must have (1) suffered an "injury in fact" that (2) is fairly traceable to the challenged action of the Defendant and (3) is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotation marks omitted). Plaintiff lacks standing because he does not have a legally protected interest at issue.

Plaintiff claims that his legally protected interest is in his certification to be a law enforcement officer. (ECF No. 1, ¶ 81; ECF No. 8 at 4). Plaintiff compares this certification to occupational licensure and consequently claims that he has a property and liberty interest in the certification. (ECF No. 8 at 4). However, certification as a law enforcement officer differs from occupational licensure in several important ways that distinguishes the instant case from the licensure line of cases where a property or liberty interest was found to be implicated.

11

Property interests are not inherent in the Constitution. *Chelo v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1039 (7th Cir. 2021). "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* Federal courts therefore turn to the applicable state law to determine whether a person has a property interest in their employment. *Id.*

"Under Illinois law, a person has a property interest in his job only where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement. Accordingly, to show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Id.* (internal citations and quotation marks omitted). Here, Plaintiff must be certified under the Act in order to be employed as a law enforcement officer. But Plaintiff cannot show that the Act created a reasonable understanding that it was creating a property interest in the certification because the Act explicitly provides that "[a]n individual *has no property interest in law enforcement certification* at the time of initial certification or at any time thereafter, including, but not limited to, after decertification or after the officer's certification has been deemed inactive." 50 ILCS 705/6.7 (emphasis added).

Plaintiff also argues that he has an occupational liberty interest in his continued employment as a law enforcement officer. He argues that working as a law enforcement officer is a common occupation forming that liberty interest. (ECF No. 4 at 8). However, the certification at issue here is distinguishable from interests at issue in the occupational license cases cited by Plaintiff. "In Illinois, individuals seeking entry into these professions typically must meet certain age and schooling requirements. Moreover, they must pass a state-sponsored, occupation-specific

exam as part of the application process." *Becker v. Illinois Real Estate Admin. & Disciplinary Bd.*, 884 F.2d 955, 957 (7th Cir. 1989).

Here, the Act does not require any specific schooling *prior* to being hired in a position requiring certification. *See* 50 ILCS 705/8.1(a). Instead, full-time officers must receive a certificate attesting to the officer's successful completion of the Minimum Standards Basic Law Enforcement or County Correctional Training Course within six months of their initial full-time employment. *Id. See also*, 20 Ill. Adm. Code § 1720.20(f).

Moreover, law enforcement officers do not have the same degree of control over their certifications like occupationally licensed professions. Generally, an occupational license is durable and does not require any additional actions if the holder of that license changes jobs. Conversely, law enforcement officers' certifications automatically becomes inactive when they leave their employing agencies. 50 ILCS 705/8.1(b)(1). It is then up to an officer's *new employing agency* to apply to the Board to re-activate the certification. *Id.* The Board may also establish special training requirements to be completed as a condition for re-activation. *Id.* Additionally, law enforcement agencies may put an officer's certification on inactive status by sending a written request to the Board. 50 ILCS 705/8.1(b)(2). All of this shows that there is no liberty or property interest in holding a certificate under the Act. Therefore, there is no legally protected interest that confers Plaintiff with standing.

## II. The Complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to state a plausible claim for relief.

### A. Count I does not state a plausible substantive due process claim because there is no fundamental right at issue and the Act has a clear rational basis.

Count I alleges a violation of substantive due process. Plaintiff claims that the Act's automatic decertification provision violates an alleged fundamental right to pursue his chosen profession. Substantive due process claims are limited to violations of fundamental rights. *Palka*

*v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). Employment rights are not fundamental. *Id.* Plaintiff alleges that becoming decertified essentially terminates his employment as a Kane County sheriff, but "an alleged wrongful termination of public employment is not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate." *Id.* Moreover, "[n]o one has a 'fundamental right' to be a law-enforcement officer." *Yates v. City of Chicago*, 58 F.4th 907, 909 (7th Cir. 2023). Because no fundamental right is at issue, the Act receives rational basis review. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) ("Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational."). Moreover, "when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show either the inadequacy of state law remedies or an independent constitutional violation before the court will even engage in this deferential rational basis review." *Id.* (internal quotation marks omitted).

Under rational basis review, a "law must merely bear a rational relationship to some legitimate end." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013). "Under rational basis review, a state law is constitutional even if it is unwise, improvident, or out of harmony with a particular school of thought." *Id.* On rational basis review, the party challenging the statute has the burden of negating every conceivable basis supporting the law. *Id.*

Here, the purpose of the Act is to promote and protect the health, safety, and welfare of Illinois citizens by having governmental bodies employing law enforcement officers maintain a high level of training and standards. *See* 50 ILCS 701/1. To that end, the General Assembly determined that any law enforcement officer who commits a felony cannot be certified under the

Act to be a law enforcement officer. 50 ILCS 705/6.1(a). This is clearly rationally related to the promotion of public safety. Making the decertification automatic as a matter of law if a person is convicted of felony, or has a sentence such as supervision, conditional discharge, probation or any "similar disposition," *see* 50 ILCS 705/6.1(a-1), is rationally related to acting efficiently and avoiding unnecessarily redundant procedures. As explained below, the automatic decertification provided for in Section 6.1 already allows for sufficient due process through the criminal process. Once a person is either convicted of a felony, or negotiates a disposition of supervision, conditional discharge, or some other similar disposition, then the person has availed himself of due process and the Board need not hold a new hearing covering the same ground as the criminal process. The Act has a clear rational basis. Count I, therefore, should be dismissed.

### B. Count II does not state a plausible claim because the Act is not unconstitutionally vague.

Plaintiff's claim that the Act is void for vagueness also fails.[11] As a preliminary matter, Plaintiff obfuscates the vagueness analysis by referring to different points in Plaintiff's criminal prosecution. Plaintiff claims that "Defendants have broadly interpreted the term 'any similar disposition provided for by law' to include a dismissal of criminal charges by a state's attorney." (ECF No. 4 at 7). This is incorrect. Defendants' position was and is that an executed deferred prosecution agreement for a felony offense triggers the automatic decertification provision in the Act. (*See* Ex. O). The relevant date is August 1, 2022, the date that Plaintiff's executed deferred prosecution agreement was accepted and filed with the court. When or whether Plaintiff's felony criminal charges were later dismissed or the criminal judge voided all prior agreements is irrelevant, because the execution of the deferred prosecution agreement was the triggering event

---

[11] Plaintiff alleges in his Complaint that the Act is "void for vagueness and unconstitutional on its face." (ECF No. 1, ¶ 89, Prayer for Relief ¶¶ b, f). Plaintiff's Motion for Preliminary Injunction does not specify whether Plaintiff is challenging the Act as void for vagueness on its face or as applied. (ECF No. 4).

under §6.1(a-1). By automatic operation of law, Plaintiff was decertified upon execution of the deferred prosecution agreement on August 1, 2022.

Plaintiff alleges that §6.1(a-1) "is unconstitutional on its face because it is so vague and ambiguous an ordinary citizen would not understand what 'any similar disposition provided for by law' means." (ECF No. 1 ¶ 89). Plaintiff's argument fails for three reasons. First, Plaintiff cannot facially challenge §6.1(a-1) as void for vagueness when no fundamental right is at issue and where Plaintiff has not made a showing that the statute is unconstitutionally vague in all possible applications. Second, even as applied to Plaintiff, §6.1(a-1) is not unconstitutionally vague. Third, even if the Court were to find §6.1(a-1) ambiguous, the Court should apply the canon of statutory construction of ejusdem generis to find that, as applied, deferred prosecution is "any similar disposition as provided for by law."

### 1. Plaintiff's facial voidness challenge of §6.1(a-1) fails.

"Not all laws are created equal with respect to vagueness doctrine." *Consumer Financial Protection Bureau v. ITT Educational Services, Inc.*, 219 F. Supp. 3d 878, 900 (S.D. Ind. 2015). "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Laws that are enforced through civil action rather than criminal prosecution require less clarity. *Id.* at 498-499. Further, laws implicating First Amendment rights or other fundamental rights are scrutinized more closely. *Id.* at 499; *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239 (2012).

Here, the Act, is a civil statute governing the certification of law enforcement officers. As mentioned above, there is no constitutional right to work as a law enforcement officer. *Yates*, 58 F.4th at 909. Therefore, the Act does not implicate a fundamental right. Further, "[f]acial challenges to regulations that do not threaten the exercise of First Amendment (and perhaps other

fundamental) rights are strongly disfavored, unless the plaintiff can show that the law is unconstitutional in every possible application." *Kissick v. Huebsch*, 956 F. Supp. 2d 981, 996 (W.D. Wis. 2013), citing *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (*en banc*) (explaining that a statute that does not implicate First Amendment rights can be "assessed for vagueness only 'as applied'"); *Chapman v. United States*, 500 U.S. 453, 467 (1991); *United States v. Powell*, 423 U.S. 87, 92 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."). Thus, Plaintiff's facial challenge to the Act must fail unless he can establish that the Act is unconstitutionally vague in every possible application. This Plaintiff has not and cannot do.

### 2. The Act is not unconstitutionally vague as applied to Plaintiff.

Plaintiff does not bring an as-applied vagueness challenge. Defendants assert that their arguments regarding Plaintiff's facial voidness challenge are dispositive and the Court's inquiry should end there. However, the Act is not unconstitutionally vague as applied to Plaintiff for three reasons: (1) the Kane County State's Attorney's Office typically requires a deferred prosecution participant to provide a "videotaped statement admitting to the elements of the case and his or her involvement in it" and Plaintiff intentionally negotiated a deferred prosecution agreement with the requirement omitted in an attempt to avoid the obvious effect of the Act (*see* Ex. L; Ex. K; ECF No. 1-1); (2) Plaintiff wrongly asserts that supervision requires an admission or finding of guilt, in an attempt to distinguish deferred prosecution and supervision; and (3) Plaintiff incorrectly states that deferred prosecution does not permit an admission or finding of guilt.

First, the Kane County State's Attorney's Office typically requires a deferred prosecution participant to provide a "videotaped statement admitting to the elements of the case and his or her involvement in it" and Plaintiff intentionally negotiated a deferred prosecution agreement with the

requirement omitted in an attempt to avoid the obvious effect of the Act. (*Id.*). The Assistant Attorney General who co-prosecuted the case and the judge both had concerns about the Plaintiff entering into a deferred prosecution program that was created specifically for him. (Ex. M at 6:17-22,18:13-23,19:23-20:03). It is clear that Plaintiff intentionally attempted to skirt the obvious implications of the Act.

Second, Plaintiff is correct that the statute contemplates that the phrase "or any similar disposition as provided for by law" is meant to apply to any criminal disposition where there is a finding or admission of guilt, however, Plaintiff attempts to contrast deferred prosecution, which he claims does not require an admission of guilt, (ECF No. 1 ¶ 42), with supervision, conditional discharge, and first offender probation, which he claims all do. (*Id.* ¶ 38). But this is a faulty comparison because both supervision and deferred prosecution permit but do not require an admission of guilt. Plaintiff is correct that conditional discharge and first offender probation are dispositions that require admissions or findings of guilt. (*Id.*) However, Plaintiff asserts (with no citation to authority) that a disposition of supervision likewise requires an admission or finding of guilt. (ECF No. 1 ¶38) ("As referenced in Section 6.1(a-1) of the Act, "supervision, conditional discharge, or first offender probation" all require a criminal defendant to enter a pela of guilty or for a court to enter a finding of guilt.") This is plainly incorrect:

> "[i]n Illinois a court may defer prosecution and impose supervision if the defendant pleads guilty, or if he stipulates to 'facts supporting the charge or a finding of guilt.' 730 ILCS 5/5-6-1(c). The first option, pleading guilty, necessarily involves an admission of guilt. […] *The second option in that statute, the stipulation, does not in any way equate with an admission of guilt or an adjudication of guilt.* Although it is possible that an Illinois court may make a finding of guilt prior to imposing supervision (e.g. after the defendant pleads guilty), such a finding is not a necessary predicate to the imposition of supervision under the statute."

*United States v. Kozinski*, 16 F.3d 795, 811-12 (7th Cir. 1994) (emphasis added). Thus, Plaintiff's claim that "supervision, conditional discharge, or first offender probation all require a criminal

defendant to enter a plea of guilty for a court to enter a finding of guilt," (ECF No. 1 ¶ 38), is clearly wrong.

Third, Plaintiff is incorrect in his insistence that deferred prosecution is a disposition, by definition, that does not include an admission of guilt. (ECF No. 1 ¶¶ 42, 45). Similarly, Plaintiff's argument that deferred prosecution does not require an admission of guilt is incorrect. (ECF No. 1 ¶ 42). The fact is that "deferred prosecution" is an umbrella term, under which several types of dispositions are contemplated.[12] Some are formal, with written agreements and an admission of guilt contemplated, with the disposition noted on the record and approved by the judge. This is the way that Kane County State's Attorney's Office deferred prosecution program typically works. (Ex. L). These more formal deferred prosecutions are akin to supervision, which is clearly contemplated by the Act as triggering automatic certification. Plaintiff does not challenge, nor would he have standing to, the inclusion of supervision in the Act as a disposition that triggers automatic decertification. Other deferred prosecution dispositions are informal, an oral agreement between the parties, perhaps memorialized in a prosecutor's file, but not spread of record or involving the court's approval. (*See e.g.* Ex. J at 3:15-21, 5:07-9; Ex. Ex. E at 3:01-21; Ex. M *Id.* at 12:01-12).

Plaintiff's misapprehension regarding the actual requirements of supervision and deferred prosecution dooms Plaintiff's argument of unconstitutional vagueness, which amounts to "one of these things is not like the other." Per the Illinois supervision statute and the Seventh Circuit's analysis of it, supervision may include but *does not require* an admission of guilt.[13] Similarly,

---

[12] See the survey of Illinois diversionary dispositions discussed below in Section III, attached hereto as Exhibit P.

[13] Supervision is not a disposition available in felony cases. 730 ILCS 5/5-6-1(c) (iii). Thus, it was not an option available in Plaintiff's criminal case here.

deferred prosecution is a disposition that may include but does not require an admission of guilt. Thus, a disposition of deferred prosecution is a "similar disposition as provided for by law" to supervision, which likewise may include but does not require an admission of guilt. Indeed, deferred prosecution is a viable alternative disposition in scenarios, as here, where a criminal defendant is charged with a felony and seeks to avoid a prison sentence and permanent conviction, and where the criminal defendant is ineligible for a disposition of supervision because the matter is a felony. This raises the point that the Kane County State's Attorney's Office could have either dismissed Plaintiff's criminal case outright, or reduced Plaintiff's charges from a felony to a misdemeanor, thereby making supervision a possible disposition. The Kane County State's Attorney's Office chose to maintain Plaintiff's charge as a felony, and the deferred prosecution agreement Plaintiff executed was for the original felony charge of Class 4 possession of a controlled substance.

### 3. If the Court finds §6.1(a-1) ambiguous, the Court should apply the canon of *ejusdem generis*.

In the alternative, if the Court finds the language of the Act ambiguous, the Court should apply the statutory construction canon of *ejusdem generis*. The *ejusdem generis* canon "instructs courts to interpret a 'general or collective term' at the end of a list of specific items in light of any "common attribute[s]" shared by the specific items." *Southwest Airlines Co. v. Saxon*, ___U.S.___ , ___, 142 S. Ct. 1783, 1789 (2022). Further, *"ejusdem generis* neither demands nor permits that we limit a broadly worded catchall phrase based on an attribute that inheres in only one of the list's preceding specific terms." *Id.* at 1792. Plaintiff attempts to define the dispositions in §6.1(a-1) as criminal dispositions that require a finding or admission of guilt. However, this interpretation is at odds both with the statutory definition of supervision, discussed above, which does not require an admission of guilt, and with the clear language of the preceding sentence of the section which

provides that "regardless of whether the adjudication of guilt or sentence is withheld or not entered thereon." 50 ILCS 705/6.1. Thus, an appropriate interpretation that preserves the intent of the Act is that "sentences of supervision, conditional discharge, or first offender probation, or any similar disposition provided for by law" are sentences that (1) contemplate a defendant being held accountable for their actions, (2) that have consequences if the terms of the sentence is violated by the defendant, (3) but may or may not include a finding or admission of guilt. Indeed, if the General Assembly wanted to specifically exclude deferred prosecution as a disposition that would trigger automatic decertification, it could have done so. By way of comparison, the United States Sentencing Guidelines that federal courts consult in crafting criminal sentences requires courts to determine which of a defendant's prior criminal dispositions count in the calculation of the defendant's criminal history. United States Sentencing Guidelines §4A1.1(c). Diversionary sentences are specifically discussed: "(f) Diversionary Dispositions. Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted." *Id.* §4A1.2.

### C. Count III does not state a plausible claim for procedural due process because the Act does not create a property or liberty interest necessitating additional process, and in any event the Act affords sufficient process through the criminal courts.

Count III alleges a claim of procedural due process. Plaintiff alleges that the Act's automatic decertification provision deprives him of due process and does not have any procedural safeguards to prevent an erroneous decertification. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth and Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). As previously explained, there is no protectable liberty or

property interest at issue in this case. Therefore, Plaintiff's procedural due process claim fails on this basis. However, even assuming that there is a liberty or property interest associated with Plaintiff's certification, the Act's automatic decertification provision does not upset procedural due process.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). The key requirement of procedural due process is that a person have the opportunity to be heard at a meaningful time and in a meaningful manner. *Matthews*, 424 U.S. at 332. Here, the Act afforded Plaintiff a meaningful opportunity to contest the allegations that he committed a felony through the criminal courts.[14] Because the Act already provides law enforcement officers accused of felonies a meaningful opportunity to be heard through this procedure, a separate administrative proceeding on the same issue is unnecessary and redundant.

This becomes more apparent when considering the specific factors courts look at to determine if an administrative proceeding satisfies due process. Courts consider three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 334-35. Here, as discussed, the private interest, Plaintiff's certification to hold a position as a law enforcement officer, is not a protectable property or liberty interest. To the extent that it is a protectable interest, this interest is low because there is no fundamental right to become a law enforcement officer. *Yates*, 58 F.4th at 909. Moreover, the certification is not durable, law enforcement officers either

---

[14] Plaintiff took full advantage of the process afforded to him in his criminal proceeding, litigating motions to suppress evidence and motions in limine that involved live witness.

need to re-do the training course to have their certifications reactivated when they change employers or otherwise have their employer apply for a waiver. 50 ILCS 705/8.1(a).

Meanwhile, the risk of an erroneous automatic decertification is extremely low. As discussed, automatic decertification is entirely dependent on the resolution of underlying criminal proceedings. Law enforcement officers are not automatically decertified without first having the complete opportunity to avail themselves of the criminal process. And while Plaintiff claims that there is a risk of error due to some sort of mistaken identity, this risk is overstated and speculative. Plaintiff does not allege that this is a case of mistaken identity. He acknowledges that he executed the deferred prosecution agreement. Moreover, the Act already has procedures to prevent this from occurring. Both law enforcement officers and their employers must report any arrest, conviction, or guilty plea of any qualifying offense to the Board within 14 days. 50 ILCS 705/6.1(b) & (c). Because law enforcement officers must personally notify the Board of any qualifying arrest, the Board can then track the case to confirm the ultimate disposition. The prospect of mistaken identity is almost zero.

In light of this, there is no need for the State to then incur the additional expense and burdens of an administrative proceeding simply to prove what was already established in the criminal proceeding. Additionally, the State's interest – promoting public safety and maintaining the integrity of the law enforcement officers employed within the State – is very high.

It is worth noting that Plaintiff's description of the outcome of his particular criminal proceeding as it relates to his automatic decertification is not accurate. *First*, Plaintiff alleges that the Board's Executive Director personally decertified him. (ECF No. 4 at 11-12). This is incorrect. As previously discussed, Plaintiff became automatically decertified *as a matter of law* as soon as he entered in the deferred prosecution agreement. Executive Calloway's letter to the Kane County

Sheriff merely memorialized and advised that the automatic decertification occurred. But Executive Calloway did not personally make any decision or take any action to affect Plaintiff's certification.

*Second*, as discussed, Plaintiff was not automatically decertified following the dismissal of his criminal charges. He was automatically decertified following his execution of the deferred prosecution agreement. By the time his criminal charges were dismissed, he was already automatically decertified. Had the charges simply been dismissed without Plaintiff first executing the deferred prosecution agreement, he would not have been automatically decertified. This was an option explicitly considered, but rejected, by the Kane County state's attorney. (Ex. E at 5).

Likewise, as previously discussed, the reason why this qualifies as a similar disposition as supervision or conditional discharge is that Plaintiff essentially conceded that the underlying criminal behavior occurred, both in litigating motions to suppress evidence and in negotiating a deferred prosecution agreement. The fact that the ultimate agreement pointedly omitted the Kane County State's Attorney's Office standard provision requiring a videotaped admission of guilt does not change this.

Ultimately, Plaintiff already received all the process necessary through the criminal courts. The risk of the Board receiving inaccurate information and advising an employer that a law enforcement officer is decertified as a matter of law is very minimal. Therefore, any additional administrative procedures are redundant, making it unnecessary for the State to incur the extra costs and burdens from holding such a hearing. Count III does not state a plausible claim for procedural due process and should be dismissed.

### D. Count IV's claim for declaratory and injunctive relief fails as a standalone claim.

In Count IV Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. (ECF No. 1 ¶ 99). However, "[t]he Declaratory Judgment Act says only that the court

*may* declare the rights and other legal relations of any interested party, not that it *must* do so." *Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018) (internal citation and quotation marks omitted). Further, "[d]eclaratory relief and injunctive relief are not standalone legal claims; rather, they are remedies that depend on the existence of underlying adverse legal interests and a meritorious legal claim." *Abraham v. State Farm Mutual Automobile Insurance Co*., No. 19 cv 3028, 2021 U.S. Dist. LEXIS 63099, *8-9 (N.D. Ill. Mar. 31, 2021). Because Plaintiff's other claims fail, his attendant claim for injunctive and declaratory relief likewise fails.

### E. Count V fails because this Court has no jurisdiction to issue a writ of mandamus directing a state official to act.

Count V claims to seek a writ of mandamus pursuant to § 5/4-101 of the Illinois Code of Civil Procedure. Plaintiff appears to cite to the wrong section of the Illinois Code of Civil Procedure, as mandamus is addressed at 735 ILCS 5/14, *et seq*. Further, the Illinois state law mandamus provision does not reference federal courts, and Plaintiff has not cited any authority for the proposition that a state statute can vest federal courts with jurisdiction. To the extent Plaintiff's complaint can be construed to seek a writ of mandamus under federal law, Plaintiff faces two hurdles in obtaining a writ of mandamus from a federal court. First, it is settled "that a federal court has no general jurisdiction to issue writs of mandamus where that is the only relief sought. In the absence of special statutory authority it can issue writs of mandamus only as ancillary to and in aid of *jurisdiction otherwise vested in it*." *Haggard v. Tennessee*, 421 F. 2d 1384, 1385 (6th Cir. 1970) (citing *Hertz v. Record Publishing Co.*, 219 F.2d 397 (3d Cir.1955)) (emphasis added). As discussed, Plaintiff's other claims fail, therefore, standing alone, the writ of mandamus fails to confer jurisdiction on this Court. Second, even if Plaintiff's other claims survive, and this Court has proper jurisdiction over those claims, thereby making his mandamus claim ancillary to those proper claims, Plaintiff would be unable to establish that a federal court has the authority to order

a state agency or state officials to act. Federal courts have no authority to issue writs of mandamus to direct state officials in the performance of their duties. *In re Campbell*, 264, F. 3d 730, 731 (2001) (collecting cases); *Haggard*, 421 F. 2d at 1385. Federal courts may grant mandamus under 28 U.S.C. § 1651 (All Writs Statute), as to other federal courts, federal agencies, or federal officials, *id.*, but "federal courts lack 'jurisdiction to issue a mandamus against state officials for violating their duties under state law.'" *Banks v. Illinois*, 258 F. App'x 902, 902 (7th Cir. 2007); *Coniston Corp v. Hoffman Estates*, 844 F.2d 461, 469 (7th Cir. 1988); *Campbell*, 264 F.3d at 731-32. Plaintiff's claim for a writ of mandamus therefore fails.

## RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### *Legal Standard*

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original); *see also Boucher v. Sch. Bd. of Sch. Dist. off Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998). A preliminary injunction is "never awarded as of right" and "never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020).

A plaintiff "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (quoting *Winter v. Nat. Res. Def. Counc.*, 555 U.S. 7, 20 (2008)). If the plaintiff satisfies all these requirements, then the court must weigh the harm that the plaintiff will incur without an injunction against the harm to the defendant if one is entered, and "consider whether an injunction is in the public interest." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotations omitted). This

analysis is done on a "sliding scale"—if the plaintiffs are less likely to win on the merits, the balance of harms must weigh more heavily in their favor, and vice versa. The court should pay "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

When ruling on a preliminary injunction, courts may take judicial notice of facts that are not subject to reasonable dispute because they are readily known or can be readily determined from sources with unquestioned accuracy. *Streight*, 2021 U.S. Dist. LEXIS 180894 at *8 (internal quotations omitted). "Courts may take judicial notice of official publications on government websites."

### *Argument*

### I. **Plaintiff does not have a likelihood of success on the merits.**

To show a likelihood of success on the merits, Plaintiff must make a "strong" showing that he will succeed on the merits, meaning that Plaintiff must demonstrate how he proposes to prove the key elements of the case. *Illinois Republican Party*, 973 F. 3d at 760, 762 (7th Cir. 2020). As discussed above in the Motion to Dismiss, the Complaint should be dismissed because Plaintiff lacks standing and has he not stated any plausible cause of action. Plaintiff does not have a likelihood of success on the merits for those same reasons and those arguments are incorporated herein.

### II. **Plaintiff has not shown sufficient irreparable harm.**

Plaintiff has also failed to establish that he will suffer irreparable harm if the Court denies his motion. Plaintiff must show more than the mere "possibility" of irreparable harm, he must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 21. Neither Plaintiff's motion for preliminary injunction, nor his Complaint, provide evidence regarding his current employment status. While the Complaint is verified, it does not contain any

allegations regarding Plaintiff's current employment status. While Plaintiff alleges that he may not currently be employed specifically as a full-time police officer (ECF No1 ¶ 76), he has *not* alleged that he has been terminated from holding any position whatsoever with the Kane County Sheriff. He also does not allege that he is unable to have any kind of income at this time. And while he argues in the motion for preliminary injunction that he loses pension credit and seniority, this argument is unsupported by any declaration or other documentary evidence. Moreover, Plaintiff has not alleged, or provided any evidence, that any law enforcement agency would hire him as a law enforcement officer following the resolution of his criminal matter *but for* the automatic decertification.

### III. The public interest favors denying a preliminary injunction.

In determining whether to grant a preliminary injunction, a court must consider "the public interest served by granting or denying the relief, including the effects of the relief on non-parties." *Bhalerao v. Illinois Department of Financial & Professional Regulations*, 834 F. Supp. 2d 775, 781 (N.D. Ill. 2011), (citing *Storck USA L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994)); *see also Winter*, 555 U.S. at 24 ("courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction"). Here, public interest favors denying a preliminary injunction for two main reasons.

### A. The public has an interest in law enforcement officers who obey the laws they are sworn to enforce.

The public interest is served by maintaining the integrity of the law enforcement officers employed within the State. *See e.g. Thanos v. Martin*, No. 90 cv 0393, 1990 U.S. Dist. LEXIS 1215, at *8 (N.D. Ill. Feb. 2, 1990) (denying preliminary injunction for not being in the public interest where the requested injunctive relief would require defendants to continue plaintiffs'

active employment "in the face of evidence that they […] violated the laws they are sworn to enforce.")

Related to the public interest in law-abiding law enforcement officers, is a statutory scheme with language that is broad enough to encompass the wide range of criminal dispositions that could be imposed. The Act is worded to include the deferred prosecution and diversion dispositions that exist throughout Illinois. (*See* No Entry: A Survey of Prosecutorial Diversion in Illinois, attached hereto as Exhibit P). The survey, completed in 2017 based on 2015 survey responses, provides an overview of the various diversion and deferred prosecution options available in Illinois' 102 counties. Kane County alone is listed as having First Offender Probation,[15] Second Chance Probation,[16] Drug Court, Mental Health Court, Bad Check Program, and *five* deferred prosecution programs: deferred prosecution,[17] misdemeanor drug/alcohol deferred prosecution, prostitution/solicitation deferred prosecution, felony drug deferred prosecution, and domestic violence deferred prosecution. *Id.* at 43.

The survey indicates that answers were provided by Michelle Halbesma, Deferred Prosecution Coordinator, Kane County State's Attorney's Office. The survey information is consistent with the information currently listed on the Kane County State's Attorney's Office's website. (Ex. L). The Kane County State's Attorney's Office website indicates that felony drug deferred prosecution is:

> available to offenders who are charged with first-time offenses of a Class 4 Unlawful Possession of a Controlled Substance up to 5 grams, and Class 4 Unlawful Possession of Cannabis, up to 100 grams. This one-year treatment-based program gives offenders the opportunity to avoid prison and a permanent

---

[15] Under 720 ILCS 550/10; 720 ILCS 570/401; 720 ILCS 646/70

[16] Under 730 ILCS 5/5-6.3.4

[17] On the Kane County State's Attorney's Office website this general deferred prosecution category is listed as "Felony/Misdemeanor."

conviction on their record, and learn to live drug-free and more productive lives, as well as reducing the likelihood that they re-offend or become perpetual offenders. Upon successful completion of all program requirements the States' Attorney's Office will agree to dismiss the pending charges.

(*Id.*) Under "Program requirements" it states "Offender must enter a formal agreement with the state's attorney, *make videotaped statement admitting to the elements of the case and his or her involvement in it*, complete a substance abuse education program, submit to random drug testing and pay program costs of $2,100." (*Id.*) (emphasis added). Plaintiff's interpretation of the Act perverts the ostensible aim of deferred prosecution—to allow a defendant to avoid prison and a permanent conviction—by claiming that deferred prosecution is meant to allow a defendant to avoid *any* lasting consequence for engaging in illegal activities. This is not the case and the public interest is not served by allowing law enforcement officers who engaged in felonious behavior to remain certified as law enforcement officers.

### B. Plaintiff should not be rewarded for attempting to avoid the clear consequences of the statute.

Here, Plaintiff maneuvered a disposition that, he thought, would avoid decertification. (ECF No. 1 ¶42 ("A deferral of prosecution does not require a plea of guilty or finding of guilt and Plaintiff believed he would retain his certification based upon the manner by which his criminal case was disposed.")). After being charged with a felony controlled substance offense, Plaintiff litigated evidentiary issues in the criminal court, retained an expert, filed a motion to dismiss, set the matter for trial, engaged in multiple Illinois Supreme Court Rule 402 conferences, and then ultimately negotiated a deferred prosecution agreement that omitted the standard videotaped admission of guilt requirement of the Kane County States' Attorney's Office deferred prosecution programs. At every stage, Plaintiff has sought to avoid the consequences of his actions. The public interest is not served by maneuvers aimed at avoiding the clear consequences of the Act through a negotiated disposition.

## CONCLUSION

Plaintiff's Complaint should be dismissed and the motion for preliminary injunction should be denied. The Complaint should be dismissed because Plaintiff lacks standing because a law enforcement certification is not a protectable property or liberty interest and he has not otherwise stated a plausible cause of action in any of his claims. For these reasons Plaintiff has also failed to establish a likelihood of success on the merits. The motion for preliminary injunction should also be denied because Plaintiff has failed to meet his burden of showing irreparable harm and the public interest factors favor denying the injunction.

WHEREFORE, Defendants respectfully request this Honorable Court deny Plaintiff's motion for preliminary injunction and dismiss this matter with prejudice.


Dated: April 28, 2023

Respectfully submitted,

| | |
|---|---|
| KWAME RAOUL | /s/ Hal Dworkin |
| *Attorney General* | HAL B. DWORKIN |
| *State of Illinois* | MARCI L. SAHINOGLU |
| | Assistant Attorneys General |
| | Office of the Illinois Attorney General |
| | 100 W. Randolph Street, 13th Floor |
| | Chicago, Illinois 60601 |
| | (312) 814-5159 |
| | (312) 636-5595 |
| | Hal.Dworkin@ilag.gov |
| | Marci.Sahinoglu@ilag.gov |