**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

AARON FEIZA                )
          Plaintiff,       )
                    )
    v.                  )
                    )
ILLINOIS LAW ENFORCEMENT  )    CASE NO. 1:23-cv-1905
TRAINING AND STANDARDS     )
BOARD("ILETSB"), *et al.*,      )
          Defendants.   )

<u>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**</u>

NOW COMES Plaintiff, Aaron Feiza, by and through his attorneys, Karlson Garza McQueary LLC, replying to Defendants' response to Plaintiff's Motion for Preliminary Injunction, and states as follows:

**PROCEDURAL BACKGROUND**

Plaintiff's motion for preliminary injunction was supported by a verified complaint. In a single document, Defendant responded to Plaintiff's Complaint and Motion for Preliminary Injunction with a Combined Motion to Dismiss and Response to Plaintiff's Motion. (ECF No. 12)[1]. Based on Defendants' combining its response with a motion to dismiss, the Court issued a modified briefing schedule. (ECF No. 14).

Pages 26-30 of Defendants' combined motion/response directly address Plaintiff's motion for preliminary injunction. Defendants' response is almost exclusively premised upon the arguments made in its motion to dismiss. For the following reasons, Plaintiff's motion for preliminary injunction should be granted.

---

[1] For clarity, references to Defendant's Combined Motion/Response Brief, Plaintiff is citing to the page numbers at the bottom of the brief, not the court-stamped page numbers at the top of the page.

**ARGUMENT**

Plaintiff relies on and reincorporates by reference all the arguments made in his motion for preliminary injunction and in response to Defendants' motion to dismiss. The parties agree on the standard for issuance of a preliminary injunction; Plaintiff must demonstrate: "(1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer irreparable harm…" if relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If those two elements are satisfied by the Plaintiffs, the Court's inquiry continues to consider: "(3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id.* Defendants provide scant argument directly addressing Plaintiff's motion. Plaintiff now addresses the elements and Defendants' assertions in turn.

**I.** **<u>Plaintiff is Likely to Succeed on the Merits.</u>**

Despite the claims made in their motion to dismiss, Plaintiff has a cognizable liberty interest in the pursuit of a common occupation. *See Becker v. Ill. Real Estate Admin. & Disc. Bd.*, 884 F.2d 955, 956 (7th Cir. 1989)(holding right to work for a living in the common occupations of the community' is a form of liberty interest originating in the Constitution.") and *Bigby v. City of Chicago,* 766 F.2d 1053, 1057 (7th Cir. 1985)(holding, "To be a policeman is to follow a particular calling, and to be excluded from that calling is an infringement of liberty of occupation.").

As explained fully in Plaintiff's response to Defendants' motion to dismiss, Plaintiff has standing and can establish his interest should be afforded due process. Plaintiff is likely to succeed on the merits because: 1) Plaintiff's automatic decertification is premised on a void agreement; 2) the statute is void for vagueness; 3) automatic decertification takes a license without due process;

4) ILETSB's executive director lacks authority to decertify; and 5) Plaintiff is not eligible for automatic decertification.

### A. Plaintiff's "automatic decertification" is premised on a void agreement.

Factually, Defendants' "automatic decertification" of Plaintiff is premised on an agreement voided by the criminal court. In this case, the criminal court declared, "any and all prior agreements and dispositions are vacated" and then dismissed the case *in toto*. "The effect of a vacated order is that of a void order." *Kelch v. Watson*, 237 Ill.App.3d 875, 877 (3d Dist. 1992). In *Kelch*, the court considered the effect of vacating a prior order granting a voluntary dismissal. *Id.* Relying on Black's Law Dictionary, the court agreed, "vacate" means, to "annul; to set aside; to cancel or rescind. To render an act void; as, to vacate an entry of record, or a judgment." *Id.* (quoting Black's Law Dictionary 1548 (6th ed. 1990). The *Kelch* court held, "The substantive effect of the order vacating the allegedly inadvertent voluntary dismissal was to restore the parties to their original status in the case; the vacatur operated as if the voluntary dismissal had never been entered." *Id*. Even when a plea agreement is "vacated", it renders "the agreement null and void." See e.g., *U.S. v. Parilla*, 06 CR 385, 2008 BL 79402, at *3-4 (N.D. Ill. Apr. 08, 2008).

In this case, it is undisputed, the trial court voided the August 1, 2022, deferred prosecution agreement/order. The sole disposition of Plaintiff's criminal case is a dismissal of all charges by the Kane County States Attorney. Defendants boldly declare:

> When or whether Plaintiff's felony criminal charges were later dismissed or the criminal judge voided all prior agreements is irrelevant, because the execution of the deferred prosecution agreement was the triggering event under §6.1(a-1). By automatic operation of law, Plaintiff was decertified upon execution of the deferred prosecution agreement on August 1, 2022." (ECF No. 12 at 15-16).

However, by operation of law, the deferred prosecution agreement is void. As explained further below, Defendants' read of the statute in this regard also demonstrates the outcome of Plaintiff's

criminal case is even more dissimilar from the other forms of criminal outcomes expressly addressed by §6.1(a-1). In any event, because the deferral agreement was expressly declared void by the court, it cannot serve as the basis for "automatic decertification."

In addition to the deferral agreement being void, it is not a "disposition." Like the term "vacate", Illinois courts turned to Black's Law Dictionary to define the term "disposition." See *People v. Oscar H.*, 362 Ill.App.3d 1106, 1117 (1st Dist. 2005). There, the court found "disposition" to mean, "a final settlement or determination or the court's disposition of the case." Here, the only "disposition" is the dismissal of charges. As such, the preliminary injunction should be granted.

### B. The automatic decertification statute is void for vagueness.

On its face, and as applied to Plaintiff, the "any similar disposition provided for by law" provision within §6.1(a-1) is unconstitutionally vague. Laws must: (1) "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" and (2) "provide explicit standards for those who apply them" to prevent "arbitrary and discriminatory enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Supreme Court explained, "a regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Here, Plaintiff had no reasonable basis to believe charges being dismissed would foreclose his ability to his chosen occupation.

### 1. ILETSB's automatic decertification of Plaintiff is not self-executing.

Without any lawful authority, ILETSB's Executive Director, or some other unnamed agent of ILETSB, interpreted the term "any similar disposition provided for by law" as contained in 50 ILCS 705/6.1(a-1). A vague law is particularly impermissible because it "'delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the

attendant dangers of arbitrary and discriminatory application.'" *Bushco v. Shurtleff*, 729 F.3d 1294, 1308 (10th Cir. 2013)(quoting *Grayned*, 408 U.S. at 108–09). Here, those fears of impermissible divining by an unnamed government official were realized.

In their brief, without any supporting affidavit or other evidence, Defendants claim the ILETSB Executive Director did not decertify plaintiff. (ECF No. 12 at 23). However, Executive Director Calloway signed the decertification order at issue. It is reasonable to conclude he, at very least, agreed with the decision to "automatically decertify" Plaintiff and implemented said decision. Defendants' unsupported claims are insufficient to overcome Calloway's writings.

Defendants claim automatic decertification occurs with no interpretation by any official. Defendants say nobody needed to make any decisions in its "automatic decertification" of Plaintiff. Instead, Defendants claim, "Plaintiff became automatically decertified *as a matter of law* as soon as he entered in the deferred prosecution agreement." (ECF #12 at 23).

This is particularly odd considering the extensive efforts at statutory interpretation Defendants share in their brief. Further, the plain language of Executive Director Calloway's October 12, 2022, letter states, "[t]he deferred prosecution program is of the type of sentence consistent with the 'similar disposition' as stated in the Act." (ECF No. 1-5). On its face, Calloway's letter demonstrates he and/or the ILETSB Board interpreted the Act. Meaning, "automatic decertification" is not self-executing and required the *ultra vires* exercise of discretion by an unauthorized actor.

50 ILCS 705/6.1(a) states the ILETSB Board has the exclusive authority to certify (and decertify) law enforcement officers. Due to the vagueness of Section 6.1(a-1), ILETSB's Executive Director has assumed the responsibility of determining what criminal dispositions qualify for automatic decertification and does so "on an ad hoc and subjective basis, with the

attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09. He exceeded his lawful authority by doing so.

### 2. Dismissal of Plaintiff's charges is not a "similar disposition."

Defendants have broadly interpreted the term "any similar disposition provided for by law" to include a dismissal of criminal charges by a state's attorney. As explained above, Defendants' "automatic decertification" is predicated upon an agreement that is "void" and not a "disposition" under Illinois law. In addition, the lack of an ascertainable standard deprives police officers of a clear understanding of what outcomes will be deemed "similar" to the outcomes of criminal cases more specifically defined by §6.1(a-1). The only "disposition" in this case, is one that dismisses the matter without a finding of guilt and vacates any previous agreements.

Defendants exert effort claiming the dismissal of Plaintiff's State court criminal charges is the same as "supervision." Defendants allege, "Plaintiff incorrectly states that deferred prosecution does not ***permit*** an admission or finding of guilt." (emphasis added)(ECF No. 12 at 17). Plaintiff never claims a deferral of prosecution does not "permit" an admission/finding of guilt. Instead, Plaintiff asserts a deferral or dismissal does not ***require*** an admission of guilt. Regardless, a plain review of the supervision statute reveals dismissal of charges, or deferral, is not a "similar disposition" to supervision.

730 ILCS 5/5-6-1(c) governs the disposition of supervision in Illinois. Section 6-1(c) provides conditions precedent for a disposition of supervision. A court may only dispose of a case with supervision "upon a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt…" 730 ILCS 5/5-6-1(c). A deferral or dismissal of charges does not require a guilty plea, nor does it require a stipulation of facts. Here, Plaintiff never pled guilty and never stipulated to facts sufficient to support charges or a finding of guilt. Plaintiff never provided

6

any sort of recorded confession.  Nonetheless, Defendants asserts Plaintiff has admitted he is guilty of the criminal allegations.  That is simply untrue.

Defendants seem to confuse mounting a defense with conceding guilt. In their brief, with gossamer-like support, Defendants declare, "Plaintiff essentially conceded that the underlying criminal behavior occurred, both in litigating motions to suppress evidence and in negotiating a deferred prosecution agreement." (ECF No. 12 at 24). Are we now left to believe Defendants will similarly consider any police officer criminal defendants who choose to remain silent, assert their right to counsel, and/or demand criminal allegations be proven beyond a reasonable doubt have also "essentially conceded" guilt too? Wrongly, but blatantly, Defendants ask the Court to strip Plaintiff of the presumption of innocence. Defendants' novel and dangerous theory should be swiftly dismissed by this Court.

In addition, for supervision to be legally permissible, the court must conclude: "(1) the offender is not likely to commit further crimes; (2) the defendant and the public would be best served if the defendant were not to receive a criminal record; and (3) in the best interests of justice an order of supervision is more appropriate than a sentence otherwise permitted under this Code." 730 ILCS 5/5-6-1(c). Unlike supervision, deferral or dismissal of charges does not require the court to take make any findings. In fact, the criminal court had no power to deny the dismissal of the charges against Plaintiff. Dismissal was an exercise of prosecutorial discretion.

Defendants beg this Court to presume Plaintiff's guilt. But how do they know that? The charges were dismissed. Defendants even note the term "felony drug" was eliminated from the void agreement. (ECF No. 12 at 9). Based upon Defendants' expansive reading of the term "similar disposition", are accused officers obligated to go to trial and be acquitted to retain their occupational certification? Based on Defendants positions taken thus far, it seems unclear if a police officer found not guilty would be safe from Defendants' expansive read of the Act

### C. "Automatic decertification" takes a professional license with no due process.

Defendants admit "automatic decertification" deprives Plaintiff of his certification without any pre-deprivation or post-deprivation hearing. "The due process clause of the Fourteenth Amendment forbids a state to deprive anyone of life, liberty, or property without due process of law." *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985). For a due process claim, a plaintiff must establish: "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). Section 6.1(a-1) operates to deprive Plaintiff and other law-enforcement officers of a protectable interest with **no** due process.

#### 1. Plaintiff has a protectable interest in his occupation as a police officer officer

Defendants do nothing to refute the authority cited by Plaintiff establishing Plaintiff has a protectable liberty interest in his license to engage in a common occupation of the community – a police officer. "To be a policeman is to follow a particular calling, and to be excluded from that calling is an infringement of liberty of occupation." *Bigby*, 766 F.2d at 1056; See also Becker *v. Ill. Real Estate Admin. & Disciplinary Bd.*, 884 F.2d 955, 957 (7th Cir. 1989)(citing *Truax v. Raich*, 239 U.S. 33, 41 (1915); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 102-03, n. 23 (1976); *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017). Plaintiff has an undeniable liberty interest in his occupational license.

#### 2. Automatic decertification has no procedural protections.

Since he has a protected interest in his certification, the Court must examine what process Plaintiff is due and when. *Simpson*, 860 F.3d at 1006. The Court must balance: 1) the private

interest at stake; 2) the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and 3) the government's countervailing interest. *Id.* at 1006.

In response to this balancing test, Defendants claim Plaintiff was afforded sufficient due process in the criminal proceedings. (ECF No. 12 at 22). Defendants cite no authority permitting the substitution of a criminal process for its own process. Plaintiff's counsel was unable to find any authority for such a process where a criminal defendant is not found guilty. The balancing test factors weigh against Defendants' request to contract out due process to a criminal system where Plaintiff was found guilty of nothing. The balancing test weighs in Plaintiff's favor.

### a. Private interest in a professional license is exceptional.

Defendant ignores the strong interest a citizen has in the ability to engage in the occupation of their choosing. *Simpson*, 860 F.3d at 1008. As the U.S. Supreme Court noted, "the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). The sole impediment to earning a living is Defendants' illegal revocation of his license to engage in that occupation. Plainly, this factor balances heavily in favor of robust due process protection.

### b. "Automatic decertification" creates a high risk of error.

The second factor for the Court to weigh is the risk of erroneous deprivation and the value, if any, of additional procedural safeguards. Again, largely, Defendants ignore the authority cited in Plaintiff's motion. "When a deprivation is irreversible—as is the case with a license suspension that can at best be shortened but cannot be undone—the requirement of some kind of hearing before a deprivation takes effect is all the more important." *Mackey v. Montrym*, 443 U.S. 1, 21 (1979). Here, the opportunity for erroneous action by Defendants is overwhelming.

In their pleading, Defendants failed to substantiate the risk of erroneous deprivation is extremely low. (ECF No. 12 at 23). However, the unclear meaning of "similar disposition" creates a high risk of erroneous deprivation. Under Defendants' read of the statute, the inclusion of prosecutorial discretion in criminal cases enhances the likelihood of deprivation due to the patchwork of policy decisions made by the 102 different elected state's attorneys across Illinois. This further diminishes any ascertainable ground by which Illinois police officers' licenses will be regulated. Worse, there is no means by which to address erroneous deprivations by post-deprivation administrative hearing or judicial review. This case is Plaintiff's only opportunity to be heard. This factor weighs in favor of Plaintiff having robust due process protections.

### c. The government has no legitimate interest in a lack of process.

The third factor for the Court to consider is the government's interest. An important government interest alone, does not justify depriving a citizen of a license to engage in an occupation without *any* pre- or post-deprivation remedy. As Judge Kendall wrote, "the public interest is also served when constitutional rights of *all* are protected, even when those rights are for an unpopular group of people." *Stone v. Jeffreys*, No. 21 C 5616, 2022 BL 353032 at *5 (N. D. Ill. Aug. 30, 2022). Moreover, Defendants never explain how the "discretionary decertification" (50 ILCS 705/6.3) and "emergency decertification" (50 ILCS 705/8.3) processes do not sufficiently empower the government to regulate problem police officers. Both of those processes provide notice and an opportunity to be heard. Meaning, even when there is an "emergency" requiring immediate suspension of a police officer's certification, the State finds a way to provide due process.

There is no government interest in depriving law enforcement officers of their license to work in their occupation with absolutely no due process when they have not been found guilty or convicted of any crime. This factor again weighs in favor of granting Plaintiff robust due process.

**D. As a matter of law, Plaintiff is not eligible for automatic decertification.**

As referenced in Section 6.1(a-1) of the Act, "sentences of supervision, conditional discharge, or first offender probation" are all established by the same statute. 730 ILCS 5/5-6-1. A deferral of prosecution and dismissal of charges is not covered by that statute. Instead, deferral of prosecution agreements are the product of an exercise of discretion by each of the 102 elected state's attorneys, not a statute. Here, Plaintiff never pled guilty and was never found guilty. Instead, the charges against Plaintiff were dismissed with no finding of guilt. Even if the Court were to conclude 50 ILCS 705/6.1(a-1) is not unconstitutionally vague, under state law, Defendants' "automatic decertification" of Plaintiff is not permitted.

**II.      Defendants' Ongoing Deprivation Irreparably Harms Plaintiff**

The Court is to apply what is known "as the 'sliding scale' approach: the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh toward its side; the less likely it is the plaintiff will succeed, the more the balance need weigh toward its side." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). "This Court must determine if Plaintiffs' claim has 'some likelihood of success on the merits, not merely a better than negligible chance.'" *Stone*, No. 21 C 5616, 2022 BL 353032 at *4 (N.D. Ill. Aug. 30, 2022)(citing *Mays v. Dart*, 874 F.3d 810, 822 (7th Cir. 2020), which relies upon *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381(7th Cir. 2018)).  In *Stone*, this Court held "What amounts to 'some' depends on the facts of the case because of the sliding scale approach." *Id*.

Nonetheless, "The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest." *Preston v.*

*Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978); see also *Pratt v. Chicago Housing Auth.*, 848 F.Supp. 792, 796 (N.D.Ill. 1994)(favorably citing *Nat'l People's Ass'n v. Vill. of Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990)). In *Stone*, this Court agreed, finding the deprivation of a constitutional right is an irreparable harm. No. 21 C 5616, 2022 BL 353032 at *3 (N. D. Ill. Aug. 30, 2022)(Judge Kendall issued a preliminary injunction finding "a continuing constitutional violation constitutes proof of irreparable harm"). In *Becker*, the Seventh Circuit held injunctive relief was appropriate when a "convicted felon" was denied a real estate license without a hearing. 884 F.2d at 959. There is irreparable injury when a government action is found to be "infringing upon the officer's liberty interest in pursuing a common occupation." *Bowman v. Twp. of Pennsauken*, 709 F.Supp. 1329, 1348 (D.N.J. 1989). As Judge Shadur concluded, "injunctive relief is a particularly appropriate remedy when the harm is prospective enforcement of an unconstitutional statute." *E&E Constr. Co. v. Ill.*, 674 F.Supp. 269, 277 (N.D.Ill. 1987). Defendants do not refute any of the authority establishing a continuing deprivation of a constitutional right is an irreparable harm.

Instead, Defendants allege Plaintiff has not suffered irreparable harm because "he has not alleged that he has been terminated from holding any position whatsoever with the Kane County Sheriff" and he has not "alleged. . .that any law enforcement agency would hire him as a law enforcement officer following the resolution of his criminal matter *but for* the automatic decertification." (ECF No. 12 at 28). This assertion is unsupportable.

Illinois police officers must be certified by ILETSB. Defendants posit Plaintiff is not harmed because he could work some other, non-law enforcement, position with Kane County. (ECF No. 12 at 28). Defendants miss the boat. Plaintiff's liberty interest is in his occupation of police officer, not his job as a Kane County deputy.

12

Worse, Defendants blithely and falsely equate all county jobs. Plaintiff asks Defendants' counsel to imagine having their law license taken without a hearing and told they are not harmed because they can still work on a road crew for the Illinois Department of Transportation. Suggesting Plaintiff is not harmed because he could get an administrative job with a county not only ignores the bevy of caselaw cited by Plaintiff, but it also insensitively diminishes the unique sacrifices made by those who serve our communities as first responders.

The sole reason Plaintiff cannot engage in his occupation is due to Defendants' wrongful decertification without any sort of due process. What's more, Defendants have threatened Plaintiff with a class 4 felony if he works as a police officer anywhere in Illinois. (ECF No. 1-3). There is no pre-deprivation or post-deprivation remedy. Defendants' ongoing unconstitutional deprivation of Plaintiff's right to due process is an irreparable harm warranting the issuance of an injunction.

### III.    <u>Balancing the Harms</u>

The court must balance Defendants' harm in granting the preliminary injunction against Plaintiff's harm if the injunction is not granted. Plaintiff is currently unable to engage in his chosen occupation. ILETSB's illegal actions impairs Plaintiff's ability to make a living, earning pension credit, enjoy the rewards of engaging in meaningful work, and other benefits affiliated with engaging in a chosen occupation.

As this Court held in *Stone*, "Mandatory relief is permissible and warranted here to preserve the constitutional rights of the" Plaintiff. No. 21 C 5616, 2022 BL 353032 at *5. Defendants do not claim they will be harmed by desisting from their unconstitutional program of "automatic decertification." As such, the Court should grant Plaintiff's request for a preliminary injunction.

13

IV.    **The Public Interest**

"The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest." *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978). We agree there is an important interest in regulating police officers. However, that interest does not justify the trammeling of Plaintiff's rights. As Judge Kendall wrote, "And the public interest is also served when constitutional rights of *all* are protected, even when those rights are for an unpopular group of people." *Stone*, No. 21 C 5616, 2022 BL 353032 at *5 In *Stone*, this Court relied upon *ACLU v. Alvarez*, which held, "the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." 679 F.3d 583, 589-90 (7th Cir. 2012).  The public is served by requiring Defendants to comply with the Constitution before robbing citizens of their ability to engage in a chosen occupation.

Defendants allege Plaintiff seeks to be rewarded for "avoid[ing] the consequences of the statute." (ECF No. 12 at 30). Defendants seemingly want to second-guess the state's attorney's discretion. Defendants provide no evidence demonstrating why the prosecution did not require a recorded confession. Perhaps, it is because the State knew it could not prove its case.

As to public interest, Defendants automatic decertification based on assumptions of guilt may have a chilling effect on those who may seek to enter policing as a career. This is of particular public concern considering the current police recruitment crisis being experienced in Illinois and nationwide.[2] Defendants expansive reading of the Act now forecloses the opportunity of citizens (who were never found guilty of anything) from entering policing. More pointedly, anyone who

---

[2]    See    e.g.:    https://www.theiacp.org/sites/default/files/239416_IACP_RecruitmentBR_HR_0.pdf; https://www.police1.com/police-recruiting/articles/illinois-survey-finds-crisis-in-police-recruitment-and-retention-tiq5if6IbrHafPuM/; https://www.policeforum.org/staffing2023

was at one point charged and then had a case dismissed, will now have had a "similar disposition" with no finding or admission of guilt.

An additional public interest consideration is the purpose behind a deferred prosecution program. This raises the question of what is the point of this program if certifying or licensing agencies are going to breathe guilt into a person who takes advantage of such a program? By Defendants' interpretation, citizens are no longer afforded the presumption of innocence merely by participating in available programs like this. This reading undermines the notion of prosecutorial discretion. State's attorneys are charged with doing justice, not just securing convictions. Defendants seek to rob prosecutors of the ability to do that. What's more, Defendants seek to second guess the elected Sheriff of Kane County who does not believe there is sufficient cause to terminate Plaintiff's employment. The public interest weighs in favor of granting the preliminary injunction.

## CONCLUSION

Defendants have taken away Plaintiff's certification (a license) to engage in his chosen occupation as a police officer. They did so without due process, without authority, and by applying an abusive interpretation of a vague statute. The Court should enter appropriate injunctive relief, including reinstatement of Plaintiff's certification, without further delay and by awarding the relief requested in Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

/s/ *Keith A. Karlson*

Keith A. Karlson (ARDC# 6279194)
MaryKate Hresil (ARDC# 6342104)
KARLSON GARZA McQUEARY LLC
235 Remington Boulevard, Suite 5B
Bolingbrook, Illinois 60440
(708)761-9030
kkarlson@kgmlawyers.com
mkhresil@kgmlawyers.com