**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AARON FEIZA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | No. 23 C 1905 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| ILLINOIS LAW ENFORCEMENT | ) | |
| TRAINING AND STANDARDS | ) | |
| BOARD, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Aaron Feiza, a Kane County Sheriff's deputy, was charged with a felony drug offense after being filmed allegedly ingesting cocaine. Feiza contested the charges in largely unsuccessful pretrial motions, as he was negotiating a possible resolution with the Kane County State's Attorney's Office. As part of these continuing discussions, the County wanted to enter a *nolle prosequi*; but the Illinois Attorney General's Office objected. The County ultimately asked the state to not be involved in the proceeding and agreed to a deferred prosecution agreement with Feiza, which the state court accepted. Upon learning that Feiza entered into a deferred prosecution agreement, the Illinois Law Enforcement Training and Standards Board decertified him as a law-enforcement officer pursuant to the automatic-certification provision of the Illinois Police Training Act.

Feiza sued the Board for acting based on an unlawfully vague statute and violating his procedural and substantive due process rights. (Dkt. 1). He also moved for a preliminary injunction, requesting reinstatement while the lawsuit proceeds. (Dkt. 4). Illinois filed a motion to dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim. (Dkt. 11).

1

For the following reasons, Illinois's motion to dismiss is denied in part and granted in part; Feiza's motion for a preliminary injunction is granted in part. (Dkts. 4, 11).

## BACKGROUND

Walter Brown and his then-girlfriend, Sherry Kublick, were socializing with Aaron Feiza, an active Kane County Sheriff's deputy, one night when Feiza allegedly decided to ingest cocaine. (Dkt. 12-4 at 50:4–56:19). Kublick filmed the drug use, then forwarded the video to Brown and, eventually, to the Illinois State Police. (*Id.* at 16:7–16:11, 69:18–72:6). The Illinois police then investigated the incident and arrested Feiza for felonious drug use. (*See id.* at 23:6–8, 85:14–86:9). A Kane County grand jury heard testimony from Kublick about the events that night, and the video taken was used as an exhibit. (*Id.* at 65:16–24). On December 4, 2019, a grand jury indicted Feiza in a case that was co-prosecuted by Kane County and the State of Illinois. (Dkt. 12-1, 12-5 at 4:1–5:4).

Feiza prepared for trial by disclosing expert witnesses and providing their credentials; filing a motion to suppress the video evidence; filing three motions *in limine* to bar other evidence; moving to disclose *Brady* material; moving to inspect documents subpoenaed from the Illinois State Police; and moving to dismiss the case for *Brady* violations. (*See generally* Dkts. 12-7, 12-8). The state court denied the motion to suppress and the motion to dismiss. (Dkt. 12-9). On June 21, 2022, the Kane County Assistant State's Attorney attempted to enter a *nolle prosequi*, (Dkt. 12-10 at 2:14–18), meaning "a declaration of the prosecuting officer that he will not prosecute further at that time." *Spak v. Phillips*, 857 F.3d 458, 461 (2d Cir. 2017) (quoting *State v. Winer*, 945 A.2d 430, 441 (2008)). Illinois now claims that the "Assistant Attorney General was under the impression that the disposition was to be formal (external) pretrial diversion." (Dkt. 12 at 5). A few months earlier, Feiza's attorney had represented to the court that his diversion "ha[d] been

2

handled internally, rather than externally." (Dkt. 12-10 at 3:18–21). The state court declined to

accept a *nolle prosequi* without "the attorney general's position." (*Id.* at 4:4–4:13).

Illinois, the Kane County State's Attorney's Office, and Feiza began negotiating a possible

resolution. (*See* Dkt. 12 at 6). The Assistant Attorney General disagreed with the case being

dismissed through an entry of a *nolle prosequi*, insisting instead upon a diversionary sentence.

(Dkt. 12-13 at 6:17–22). The Kane County Assistant State's Attorney decided it "would like the

AG's office to discontinue their involvement in [the] case." (*Id.* at 7:9–15). "Based on that

representation and its understanding of the law," the state court agreed that Illinois could no longer

participate in the prosecution. (Dkt. 12 at 7; Dkt. 12-13 at 2:15–7:6, 23:6–11). The County, now

acting alone, negotiated the terms of a deferred prosecution agreement, which the state judge

accepted without the customary requirement of a videotaped admission of guilt. (Dkt. 12-14; *see

also* Dkts. 12-11, 12-12). After learning of the deferred prosecution agreement, the Illinois Law

Enforcement Training and Standards Board (the "Board") decertified Feiza as a law-enforcement

officer "by automatic operation of law," specifically, the Illinois Police Training Act. (Dkt. 12 at

9 (citing 50 ILCS 705/6.1(a)). The Board then sent a letter to Kane County Sheriff Ronald Hain,

informing him of the decertification. (Dkt. 12-15). As a result of decertification, Feiza is prohibited

from working as a Kane County Sheriff's deputy or any law-enforcement officer in Illinois. (Dkt.

1 ¶ 58). Feiza asked for a hearing to contest the decertification, to no avail. (*Id.* at ¶ 59).

Unable to regain certification through a state administrative remedy, Feiza sued the Board,

along with various other officers, for violating his substantive and procedural due process rights

and operating pursuant to a void-for-vagueness statute. (Dkt. 1). He seeks declaratory and

permanent injunctive relief and a state-law writ of mandamus. (*Id.*) Feiza has also moved for a

preliminary injunction while his federal suit proceeds. (Dkt. 4). Illinois moves to dismiss the

Complaint for lack of subject-matter jurisdiction and failure to state a claim, and it opposes the preliminary injunction motion. (Dkts. 11, 12); *see also* Fed. R. Civ. P. 12(b)(1), (6).[1] The Court starts with the motion to dismiss before turning to the motion for a preliminary injunction.

## DISCUSSION

### I.      Motion to Dismiss

#### A.      Standing

Article III grants the federal courts jurisdiction over "cases" and "controversies." U.S. Const. art. III § 2. Any person or party "invoking the power of a federal court must demonstrate standing to do so." *Hero v. Lake Cnty. Election Bd.*, 42 F.4th 768, 772 (7th Cir. 2022) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). The three familiar standing elements are (1) an actual or imminent concrete and particularized injury to the plaintiff, which (2) is traceable to the defendant's conduct and (3) can be remedied by judicial relief. *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022). There is little doubt here that Feiza has standing. He sustained several "textbook" injuries: lost income from unemployment, police decertification, and the alleged deprivation of a constitutional right. The Board caused the injuries by decertifying him—an action detailed in the Complaint and one that Illinois, in its briefs, makes abundantly clear. And a preliminary or permanent injunction, combined with declaratory relief, would remedy the injury by allowing Feiza to resume work at the Kane County Sheriff's office, thereby restoring him to his chosen profession.

---

[1] Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint when the court lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a party fails to state a claim, Fed. R. Civ. P. 12(b)(6). Courts resolving Rule 12(b)(1) challenges employ the same "plausibility" standard used to evaluate Rule 12(b)(6) motions to dismiss. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). All well-pleaded facts in the complaint are considered true, and all reasonable inferences are drawn in the plaintiff's favor. *Gociman v. Loyola Univ. Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). Although Feiza objects to the state providing additional facts, none support this Court's conclusions.

Illinois dedicates three pages of its memorandum to explaining why a certification differs from a license, meaning there is no "legally protected interest." (Dkt. 12 at 11–13). But this argument misses the mark. It is black letter law that a merits analysis has no place in a standing challenge. *See, e.g.*, *Constr. Indus. Ret. Fund of Rockford v. Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir.1993) ("[A] litigant doomed to lose does not for that reason lack standing to sue."). Whether Feiza has a property interest in his certification goes directly to his procedural due process claim. Irrespective of how that question is later answered, the Board's actions still caused several cognizable harms in a manner that a judicial remedy would cure. Standing requires nothing more.

### B. Claims

#### 1. Void for Vagueness (Count II)

Starting with Count II, Feiza challenges the Illinois Police Training Act as unconstitutionally vague. (Dkt. 1 ¶¶ 87–90). The prohibition against vague laws is "an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). The doctrine "guarantees that ordinary people have 'fair notice' of the conduct a statute" governs. *Id.* (citing *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972)). Without such protection, a law could sweep in boundless conduct, affording prosecutors, judges, juries, and ordinary citizens great leeway to regulate unobjectionable behavior, beyond legislative intent. *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

Several standards help evaluate vagueness: First, laws "must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). "Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who

apply them." *Id.* Third, the "degree of vagueness" depends on the "nature of the enactment." *See Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982). Economic regulation is held to a lower standard, for example, because economic demands usually require carefully planning behavior before acting. *Id.* Fourth, civil enactments are treated differently since "the consequences of imprecision are qualitatively less severe." *Id.* Fifth, a scienter requirement can mitigate vagueness. *See id.* "Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Id.*

To emphasize, tolerance for broad civil laws is greater than for broad criminal statutes. *See id.* This principle is unsurprising. The void-for-vagueness proscription derives from the legal maxim, *nullum crimen, nulla poena, sine lege*, "[u]nless there be a violation of law preannounced … there is no crime, and can be no punishment." *Sparf v. United States*, 156 U.S. 51, 88 (1895). Civil laws carry with them neither "crime" nor "punishment," and so, the consequences for permitting loose language are less severe. Indeed, Feiza cannot point to any Supreme Court case striking down a civil statute.

Under these standards, the Illinois Police Training Act is not unconstitutionally vague. The disputed provision—the automatic decertification of full-time and part-time law-enforcement officers, 50 ILCS 705/6.1—is clear to a "person of ordinary intelligence." *Grayned*, 408 U.S. at 108. The statute requires the Board to decertify an officer if the "law enforcement officer has been convicted of, found guilty of, entered a plea of guilty to, or entered a plea of nolo contendere to" one of the enumerated offenses, which are largely felonies and serious misdemeanors. 50 ILCS 705/6.1(a). The phrase "entered a plea of guilty to" "includes sentences of supervision, conditional

discharge, or first offender probation, or any similar disposition provided for by law." 50 ILCS 705/6.1(a-1).

"Any similar disposition provided for by law" is not so open-ended as to defy all attempts at definition. Rather, it ties related "dispositions" to one of several other specified situations. The world of possible judicial resolutions is small; a law aimed at preventing continued service of crime-committing police officers could only reach a handful of dispositions. In essence then, "any similar disposition" functions as an application of the *ejusdem generis* canon: "[W]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates v. United States*, 574 U.S. 528, 545 (2015) (plurality opinion) (quoting *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 384 (2003)). From reading the statute, a reasonable person would know, or reasonably guess, that a deferred prosecution agreement might fall within the ambit of "any similar disposition," whereas uncharged crimes would not.

Nor does the catch-all clause invite "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108. The Board could only enforce the provision when a law-enforcement officer has, at least, been credibly indicted and evidence exists that would lead the prosecution to pursue some judicial disposition. Moreover, the law functions as an economic regulation, focusing on police certification, and law-enforcement officers likely suspect that they could not continue in their jobs with felonious criminal records. Most significant, the statutory scheme is civil, not criminal, so there are no hefty criminal penalties to tip the scales in favor of narrowing the law's scope. Although decertification relates to a constitutional right, that connection does not seriously

"threaten[] to inhibit the exercise of constitutionally protected rights," like free speech. *Village of Hoffman Estates*, 455 U.S. at 498. Thus, Feiza's void-for-vagueness challenge fails to state a claim.

### 2. Due Process

The Due Process Clause of the Fourteenth Amendment enshrines the value that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *see also id.* amend. V (federal Due Process Clause). This guarantee includes both a procedural right to fair process and a "substantive sphere … 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 372, 331 (1986)). In Counts I and III, Feiza challenges his decertification on substantive and procedural due process grounds. (Dkt. 1 ¶¶ 78–86, 91–96). The Court addresses the latter first.

### i. Procedural Due Process (Count III)

Procedural due process "imposes basic procedural obligations on the government—in most cases, prior notice and a meaningful opportunity to be heard—before it deprives a person of life, liberty, or property." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018). "A procedural-due-process violation occurs when there has been: (i) a deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Sherwood v. Marchiori*, 76 F.4th 688, 694 (7th Cir. 2023) (quoting *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023)) (cleaned up).

<u>Protected Interest</u>. Feiza alleges that he has a property interest in his law-enforcement certification.[2] (Dkt. 1 ¶¶ 91–96). "To have a property interest in a benefit, a person clearly must

---

[2] Feiza also alleges that he has a liberty interest in pursuing his chosen profession. "Without doubt," the liberty of the Due Process Clause "denotes not merely freedom from bodily restraint but also the right of the individual to contract [and] to engage in any of the common occupations of life." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972). But the question of whether the state infringed Feiza's liberty is more difficult. *Cf. id.* at 575 ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."). Because this Court concludes that Feiza has a property interest in his certification, it does not reach his alternative liberty-interest argument.

have more than an abstract need or desire for it. … He must [] have a legitimate claim of entitlement to it." *Bd. of Regent of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also Lukaszczyk v. Cook County*, 47 F.4th 587, 604–05 (7th Cir. 2022). That legitimate claim of entitlement does not derive from the Constitution but instead comes from "an independent source," often state or common law, sufficiently defined to engender reasonable reliance. *Roth*, 408 U.S. at 577; *cf. Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). The legitimate-claim-of-entitlement inquiry is "flexible"—if, at times, amorphous, being "more standard than rule, more guidance than formula." *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022). Examples of property interests include welfare benefits, *Goldberg v. Kelly*, 397 U.S. 254, 261–62 (1970), public employment, *Perry v. Sindermann*, 408 U.S. 593, 602–03 (1972), public education, *Goss v. Lopez*, 419 U.S. 565, 573 (1975), parole revocation, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), and a prisoner's good-time credits, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

This case implicates an easily ascertainable property interest: a state license. A long line of precedent recognizes that when a person is awarded a license, she has a property interest in that same license. In *Bell v. Burson*, the Supreme Court considered the constitutionality of Georgia's Motor Vehicle Safety Responsibility Act, which permitted the suspension of a license without any hearing if a driver did not post security to cover damages from an accident. 402 U.S. 535, 535–36 (1971). The Court explained that a law barring the "issuance of licenses" based on similar circumstances, like not carrying liability insurance or posting security, "would not … violate the Fourteenth Amendment." *Id.* at 539. But "[o]nce licenses are issued … their continued possession [is] essential in the pursuit of a livelihood," and the "[s]uspension of issued licenses thus involves

state action that adjudicates important interests of the licenses." *Id.* This holding flows from the "general proposition" that constitutional procedural restraints "limit state power to terminate an entitlement." *Id.*

By the same token, the Supreme Court has repeatedly determined that individuals have property interests in state licenses. *Barry v. Barchi*, 443 U.S. 55, 64 (1979) (horse-training license); *Mackey v. Montrym*, 443 U.S. 1, 10 (1979) (suspension of a driver's license); *Dixon v. Love*, 431 U.S. 105, 112 (1977) (revocation of a driver's license). The Seventh Circuit has acknowledged and reiterated this principle. *See, e.g.*, *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017) ("Government-issued licenses to perform certain types of work that allow the license holders to earn their livelihoods are a form of government-created property—an entitlement—and have long been considered property protected by the Fifth and Fourteenth Amendments."). Applying this principle, other circuits have held that law-enforcement officers have property interests in their licenses. *See, e.g.*, *Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011) (police license); *Chmielinski v. Massachusetts*, 513 F.3d 309, 315 (1st Cir. 2008) (probation-officer license).

As a threshold matter, the parties dispute whether police certification is akin to a license. (Dkt. 12 at 11 ("[C]ertification as a law enforcement officer differs from occupation licensure ….")). The statutory scheme makes it clear that Illinois police "certification" bestows a right similar to a police "license." The Illinois Police Training Act

> provide[s] for the creation of the Illinois Law Enforcement Training Standards Board for the purpose of encouraging and aiding municipalities, counties, park districts, State controlled universities, colleges, and public community colleges, and other local governmental agencies of this State, and participating State agencies in their efforts to raise the level of law enforcement by upgrading and maintaining a high level of training and standards for law enforcement executives and officers, county corrections officers, sheriffs, and law enforcement support personnel under this Act. It is … the responsibility of the board to ensure the required participation of the pertinent local governmental units in the programs established under this Act,

10

>to set standards, develop and provide quality training and education, and to aid in
>the establishment of adequate training facilities.

50 ILCS 705/1. Adhering to its statutory command, the Board promulgated a certification process for police officers. *See* 20 Ill. Admin. Code §§ 1720.10–1720.90. Prospective law-enforcement officers must obtain a high-school degree, complete a minimum number of hours in the Minimum Standards Basic Law Enforcement Officers Training Course, *id.* § 1720.10, pass the entrance exam, above a Board-established minimum score reflecting the applicant's "knowledge and competency," *id.* § 1720.20, complete the firearm training course as required by the Peace Officer and Probation Officer Firearm Training Act, *id.* § 1720.30; *see also* 50 ILCS 710/0.01 *et seq.*, and meet the academy entrance qualifications, such as being "a person of good character," 20 Ill. Admin. Code § 1720.35. After meeting these requirements, an applicant must then receive certification from the Board; as the state readily acknowledges, "Plaintiff must be certified under the Act to be employed as a law enforcement officer." (Dkt. 12 at 12). The combination of requisite qualifications, a detailed and regulated application process, and the complete loss of occupation upon revocation represent the hallmarks of a license.

The automatic-decertification provision does add a wrinkle into the legal analysis, but it does not eliminate the property interest. As noted above, an officer cannot be certified if she "has been convicted of, found guilty of, entered a plea of guilty to, or entered a plea of nolo contendere to, a felony offense," including "sentences of supervision, conditional discharge, or first offender probation, or any similar disposition provided for by law." 50 ILCS 705/6.1. Contrary to the state's position, this mechanism acts as a revocation provision, which as discussed, only garners significance *after* a license has been issued, meaning *after* a person has earned a legitimate claim of entitlement. As the Supreme Court has explained, "[s]uspension of issued licenses [] involves state action that adjudicates important interests of the licensees." *Bell*, 402 U.S. at 539. That

11

principle extends to statutes that enumerate reasons for revocation based on poor behavior. *Barry v. Barchi* makes that explicit: there, a New York law called for the suspension of a horse trainer's license "if he knew or should have known that the horse had been drugged, or if he negligently failed to prevent it." 443 U.S. at 64 n.11. That "state law … engendered a clear expectation of continued enjoyment of a license absent proof of culpable conduct by the trainer"—giving a licensee "a legitimate 'claim of entitlement … that he may invoke.'" *Id.* (quoting *Perry*, 408 U.S. at 601).

Of course, a state can set conditions for when a license should be revoked, and broad discretion to freely suspend or revoke a license might destroy a property interest, *see Town of Castle Rock*, 545 U.S. at 756. Neither of those legal principles changes the bottom line: a licensee retains the right to due process through suspension and revocation. While that right is often limited to contesting the applicability of a statutory provision to the revocation, as it is here, that due process must, nonetheless, be carefully guarded.

The Second Circuit's opinion in *Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009), provides a helpful analogue. Spinelli owned and operated Olinville Arms, a gun shop, shooting range, and travel agency. *Id.* at 164. The New York City Police Department License Division issued the store a gun-dealer license conditioned upon compliance with many strict regulations. *Id.* If a gun dealer failed to continuously comply, a license could be suspended or revoked "for good cause." *Id.* (quoting 38 RCNY § 4-04(l)). Following the September 11 terrorist attacks, New York City suspended Spinelli's license without notice or the opportunity for a post-deprivation hearing. *Id.* at 164–65. Reversing the district court's grant of summary judgment for the City, the Second Circuit explained: "While a person does not have a protected interest in a possible future business license, the situation changes once the license is obtained." *Id.* at 169 (cleaned up).

"Although there may be no protected property interest where the licensor has broad discretion to revoke the license, here, such discretion was carefully constrained." *Id.* (internal citation omitted). The City lacked such "broad discretion." *Id.*

The Illinois Police Training Act, like New York City's gun-dealer licensing system, does not give the Board "broad discretion." *Id.* Rather, its discretion is "carefully constrained." *Id.* A law-enforcement officer certification can be rescinded automatically only if the person "has been convicted of, found guilty of, entered a plea of guilty to, or entered a plea of nolo contendere to, a felony offense" or an enumerated misdemeanor. 50 ILCS 705(a). Thus, the law engenders "a clear expectation of continued enjoyment of a license absent proof of culpable conduct"—giving Feiza "a legitimate 'claim of entitlement … that he may invoke at a hearing.'" *See Barry*, 443 U.S. at 64 n.11 (quoting *Perry*, 408 U.S. at 601).

Illinois acknowledges the importance of police certification to an officer's livelihood but maintains that the Illinois Police Training Act destroys any potential property interest. The state correctly recites the law, which provides that an individual "has no property interest in law enforcement certification at the time of certification or any time thereafter." 50 ILCS 705/6.7. But this provision amounts to nothing more than a creative attempt at circumventing procedural due process. State law can create—or not create—a property interest. *See Roth*, 408 U.S. at 577. It cannot, however, answer the legal question of whether the law provides a property interest under the legitimate-claim-of-entitlement test. Illinois seeks to do as much, in essence, by providing its preferred result (no property interest). Accepting Illinois's position would nullify a bedrock protection, as any state could defeat due process requirements by attaching the words "not a property interest" to a law—or to its entire code.

Employing similar reasoning, the Supreme Court has rejected the notion that a state can set the procedural requirements for any property interest it creates. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee.'" *Id.* (internal quotation omitted). "If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery." *United States v. Peters*, 9 U.S. (5 Cranch) 115, 136 (1809). Illinois, through the establishment of its police-certification scheme, created a property interest—a conclusion this Court, not the legislature, must reach. From there, the Due Process Clause secures that interest.

Procedure. Given that Feiza had a property interest in his police certification that the state deprived him of through automatic decertification, the question becomes whether the state did so using adequate procedures. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). It is "not a technical conception with a fixed content unrelated to time, place and circumstance." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961). To that end, "the specific dictates of due process" require considering three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Often, the "general constitutional standard" calls for "notice of the employer's reasons and a *meaningful* opportunity to respond before" a decision is made. *Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 476 (7th Cir. 2014).

Here, Feiza received virtually no due process, either pre- or post-termination. That absence is by design. Automatic decertification removes any chance to contest the Board's decision. *See* 50 ILCS 705/6.1. A law-enforcement officer loses certification if her criminal case ends in one of the enumerated dispositions. *See id.* Illinois touts this fact throughout its brief. (*E.g.*, Dkt. 12 at 23 ("As previously discussed, Plaintiff became automatically decertified *as a matter of law* as soon as he entered in the deferred prosecution agreement.")). Although the state believes automatic decertification means due process does not apply, the provision has the opposite effect: automatic decertification declares that a plaintiff has *no* procedural protections. Due process demands something more. *Mathews*, 424 U.S. at 335.

The private interest of a license is well-understood. The Supreme Court has "repeatedly recognized the severity of depriving someone of his or her livelihood." *FDIC v. Mallen*, 486 U.S. 230, 243 (1988); *see also Roth*, 408 U.S. at 577 ("It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined."). Indeed, "[o]nce licenses are issued, … their continued possession may become essential in the pursuit of a livelihood." *Bell*, 402 U.S. at 539. That is the case here. Feiza has lost income, health insurance, pension-creditable service, his professional reputation, and the ability to work in his chosen occupation as a law-enforcement officer. (Dkt. 1 ¶ 96). While the government has an interest in promoting public safety and maintaining the integrity of the people tasked with enforcing laws, that interest does not grace it with free reign. *See Gilbert v. Homar*, 520 U.S. 924, 932 (1997). Illinois also has an interest in ensuring that police-accountability laws properly single out officers who commit felonies; innocent officers, who have received all the requisite training, are fundamental to "promoting public safety." *Cf. Loudermill*, 470 U.S. at 544 ("[T]he employer shares the employee's interest in avoiding disruption and erroneous

decisions; and until the matter is settled, the employer would continue to receive the benefit of the employee's labors.").

Imposing minimal procedural requirements would pose little trouble for the state. Notifying someone of their potential license loss and the reason for that decision is simple, as is affording the accused the chance to respond—if only in writing—and receive a written explanation. Indeed, the Illinois Police Training Act already has pre- and post-deprivation hearings for "discretionary decertification." 50 ILCS 705/6.3; *see also* (Dkt. 1 ¶¶ 70–71).

Illinois imagines that these procedures would be like a full-scale criminal trial. (*See* Dkt. 12 at 23 ("[T]here is no need for the State to then incur the additional expense and burdens of an administrative proceeding simply to prove what was already established in the criminal proceeding.")). That need not be the case. The accusations here are serious, and the procedural relief can be tailored to acknowledge the circumstances. *See Morrissey*, 408 U.S. at 481. For instance, due process jurisprudence draws a distinction between pre- and post-deprivation procedures. *Compare Goldberg*, 397 U.S. at 261–62 (1970), *with Mathews*, 424 U.S. at 333–34. And in "situations where the [state] perceives a significant hazard in" allowing the person to retain a license before a determination, "it can avoid the problem by suspending" the license pending a prompt review. *Loudermill*, 470 U.S. at 544–45; *see also Gilbert*, 520 U.S. at 930 ("This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause.").

Illinois also asserts that the "Act affords sufficient process through the criminal courts." (Dkt. 12 at 21). This assertion is problematic, however, for two reasons. *First*, although a criminal proceeding may substitute for the necessary civil procedures, or at least help establish important

16

facts, the state continues to accept Feiza's guilt based on insinuation and conjecture. The state's memorandum recounts at length its various attempts to insist upon some admission of criminal guilt. (Dkt. 12 at 7–9). But those efforts never came to fruition. The state court rejected Illinois's input in the case over that of the County. (*Id.* at 9). Lacking any meaningful evidence, Illinois turns to vague circumstantial evidence, like the fact that there was no videotaped admission of guilt, which is not customary. (*Id.*) That could easily cut the other way: maybe Feiza never admitted guilt because the crime never happened.

To compound matters, Illinois seeks to punish Feiza for "litigating motions to suppress evidence and … negotiating a deferred prosecution agreement." (*Id.* at 24). Exercising constitutional rights by moving to suppress evidence is not only an accepted practice, but also, at times, an encouraged one. A good attorney should attempt to achieve the best result for her client through both procedural means (such as suppressing evidence) and substantive means (such as winning an acquittal before a jury). Negotiating a deferred prosecution agreement does not signify guilt, particularly in a system where most cases are resolved without trial. *Cf. Missouri v. Frye*, 566 U.S. 134, 143 (2012) ("Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas."). A state should not—and cannot—present a legal conclusion that someone is guilty based on such flimsy logic. Doing so would endanger many cherished freedoms.

*Second*, and more fundamentally, Illinois seeks to relitigate the underlying criminal dispute. To begin, it is not the role of this Court to adjudicate Feiza's guilt, nor settle a federalism dispute between a state and local government, nor clean up mistakes committed by prosecutors. All that aside, the question that the Board must settle through due process is not—as the state seeks to frame it—whether Feiza committed a felony drug offense. Rather, the proper question is

17

whether, based on the facts and law, the Illinois Police Training Act requires license revocation because Feiza's deferred prosecution agreement represents a "similar disposition." 50 ILCS 705/6.1(a-1). That inquiry is narrow and manageable.

At minimum, an Illinois law-enforcement officer is owed "notice of the proposed deprivation, a statement of reasons, and an opportunity to be heard in response," in writing at least. *Bradley v. Village of University Park*, 929 F.3d 875, 882 (7th Cir. 2019). The Board provided none of that to Feiza and, thus, violated the Due Process Clause. Illinois has not, before this Court, argued that the facts justify decertification pending post-deprivation remedies or, assuming a property interest, which procedures may be necessary. *See Loudermill*, 470 U.S. at 544–45. In a future case, it might be wise to do so. *See Gilbert*, 520 U.S. at 932 ("[T]he State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers."). But for now, the Court need not take a position on those more difficult questions. Feiza's procedural due process claim survives.

### ii.        Substantive Due Process (Count I)

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997); *see also Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019) ("A plaintiff must allege that the government violated a fundamental right or liberty."). "Fundamental rights and liberty interests" safeguard personal autonomy and family relations, such as parental rights, *Meyer v. Nebraska*, 262 U.S. 390, 400–01 (1923) (teaching foreign languages); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534 (1925) (school choice); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (child visitation), family association, *Moore v. City of East Cleveland*, 431 U.S. 494, 503–04 (1977),

contraceptive access, *Griswold v. Connecticut*, 381 U.S. 479, 485–86 (1965) (married couples); *Eisenstadt v. Baird*, 405 U.S. 438, 447 (1972) (unmarried couples); *Carey v. Population Servs. Int'l*, 431 U.S. 678, 685 (1979) (general access), marriage, *Loving v. Virginia*, 388 U.S. 1, 12 (1967) (interracial marriage); *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978) (opposite-sex marriage); *Obergefell v. Hodges*, 576 U.S. 644, 665 (2015) (same-sex marriage), and intimate relations, *Lawrence v. Texas*, 539 U.S. 558, 564 (2003). *Cf. Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2277 (2022) ("And to ensure that our decision is not misunderstood or mischaracterized, we emphasize that our decision concerns the constitutional right to abortion and no other right.").

Generally, though, the "scope of substantive due process is very limited." *Campos*, 932 F.3d at 975 (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005)). Courts are "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). And since the end of the so-called "*Lochner* era"—a span of about thirty years at the turn of the century when the Supreme Court struck down regulatory laws based on "economic" substantive due process—employment-related rights have not been recognized as "fundamental rights." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). "Accordingly, a public employee alleging wrongful termination cannot state a substantive due process claim 'unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate.'" *Campos*, 932 F.3d at 975 (quoting *Palka*, 623 F.3d at 453).

As such, this case is straightforward: Feiza alleges "a property and liberty interest in his right to be compensated, continued employment, and good reputation as a certified full-time law

enforcement officer," and the "fundamental right to pursue his chosen occupation." (Dkt. 1 ¶¶ 81, 83). Neither assertion is grounded in a recognized fundamental right, and so, Feiza has no colorable substantive due process claim. *See Campos*, 932 F.3d at 975; *Palka*, 623 F.3d at 453.

### C.   Remedies

#### 1.   Illinois Act (Count V)

In Count V, Feiza seeks a writ of mandamus under § 5/4-101 of the Illinois Code of Civil Procedure. (Dkt. 1 ¶ 109). But a federal court—whose authority comes from Article III of the Constitution and congressional statutes, not Illinois law—can only grant remedies vested to *federal* courts by *federal* law. *See* U.S. Const. art. III ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); 28 U.S.C. § 132 (creation and composition of district courts); *id.* §§ 1330– 1369 (jurisdiction of the federal district courts); *id.* § 2201 (declaratory judgment); Fed. R. Civ. P. 65 (preliminary injunction and temporary restraining order). Nor can a federal court enjoin state actors based on violations of state law. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (*Pennhurst II*) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."); *Lukaszczyk* , 47 F.4th at 604 ("Individual state officials may be sued personally for federal constitutional violations committed in their official capacities, but that principle does not extend to 'claim[s] that state officials violated state law in carrying out their official responsibilities.'" (quoting *Pennhurst II*, 465 U.S. at 121)). To the extent Feiza asks for a state-law remedy or a federal remedy based on state law, he filed his Complaint in the wrong forum.

### 2. Permanent Injunction and Declaratory Relief (Count IV)

Illinois's sole argument against Feiza's claim for permanent injunctive and declaratory relief is that Count IV cannot serve as a "standalone claim." (Dkt. 12 at 24). "Because Plaintiff's other claims fail, his attendant claim for injunctive and declaratory relief likewise fails." (*Id.* at 25). But Feiza's claim for procedural due process does *not* fail, so neither does his claim for an appropriate remedy.

## II. Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1324 (7th Cir. 2022) (quoting *Winter*, 555 U.S. at 20). On the first prong, the plaintiff must "demonstrate that [his] claim has some likelihood of success on the merits, not merely a better than negligible chance." *Doe*, 43 F.4th at 791 (quoting *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020)). A plaintiff's likelihood of success, the Seventh Circuit has stressed, is "often decisive"—as it is here. *Braam v. Carr*, 37 F.4th 1269, 1272 (7th Cir. 2022). As explained above, Feiza is likely to prevail on the merits of his procedural due process claim. For thoroughness, the Court addresses the remaining preliminary-injunction factors.

The party seeking a preliminary injunction must show, in addition to a likelihood of success on the merits, that absent an injunction, irreparable harm will ensue. *Int'l Ass'n of Fire Fighters, Loc. 365 v. City of East Chicago*, 56 F.4th 437, 450 (7th Cir. 2022). "Harm is irreparable if legal

remedies are inadequate to cure it," meaning "the remedy must be seriously deficient as compared to the harm suffered." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021) (quoting *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)). Deprivations of constitutional rights often amount to "irreparable harm." *See* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2023) ("When an alleged deprivation of a constitutional right is involved … most courts hold that no further showing of irreparable harm is necessary."). For instance, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *see also Int'l Ass'n of Fire Fighters*, 56 F.4th at 450–51 ("[I]rreparable harm is presumed in First Amendment cases."). Feiza credibly alleges that he will suffer irrecoverable lost income during litigation, and other employment would not fill in the pay gap, plus the deprivation of his constitutional right to adequate due process. (Dkt. 1 ¶¶ 102, 103). Thus, irreparable harm will ensue. *See Int'l Ass'n of Fire Fighters*, 56 F.4th at 450.

Both the balance of the equities and the public interest favor Feiza. He has suffered an alleged deprivation of a constitutional right along with a substantial financial burden and loss of his police certification. Of course, Illinois must promote public safety, which is a "public interest." *Cf. Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017) ("[T]he district court should focus on whether a *critical* public interest would be injured by the grant of injunctive relief." (emphasis added)). But providing procedural safeguards for law-enforcement officers' interests in their certifications would impose a minimal burden on public safety. Indeed, additional procedure would ensure that law-enforcement officers who have not committed any criminal offense may continue to protect the community.

## CONCLUSION

For these reasons, the motion to dismiss for lack of subject-matter jurisdiction is denied. (Dkt. 11). The motion to dismiss for failure to state a claim is denied in part (Counts III & IV) and granted in part (Counts I, II & V). (*Id.*) The motion for a preliminary injunction is granted in part: the Illinois Law Enforcement Training and Standards Board is ordered to restore Feiza's police certification[3] and is enjoined from enforcing the automatic-decertification provision of the Illinois Police Training Act, 50 ILCS 705/6.1, against him until it observes appropriate constitutional procedures for doing so, as set forth in this Opinion: "notice of the proposed deprivation, a statement of reasons, and an opportunity to be heard in response," at least in writing, *Bradley*, 929 F.3d at 882. (Dkt. 4). The Board may petition this Court for dissolution of the injunction upon successful completion of the necessary procedural steps.


Virginia M. Kendall
United States District Judge

Date: September 26, 2023

---

[3] *See, e.g.*, *Int'l Ass'n of Fire Fighters*, 56 F.4th 437; *Tsirelman v. Daines*, 794 F.3d 310 (2d Cir. 2015); *Dwyer v. Regan*, 777 F.2d 825 (2d Cir. 1985).